[No. S167531. Jan. 20, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JAIME VARGAS SOTO, Defendant and Appellant.

232

COUNSEL

Heather MacKay, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Manuel M. Medeiros, State Solicitor General, Gerald A. Engler, Assistant Attorney General, Donald E. de Nicola, Deputy State Solicitor General, Stan Helfman, Mark S. Howell, Laurence K. Sullivan and Jeffrey M. Laurence, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CORRIGAN, J.**—The Legislature has made it a crime to commit a lewd or lascivious act on a child under age 14. (Pen. Code, § 288, subd. (a).) It has mandated additional penal consequences when the act is committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim." (Pen. Code, § 288, subd. (b)(1).)[1] Unlike the crime of rape, there is no requirement that the lewd acts be committed "against the will of the victim." Indeed, 20 years ago the Legislature specifically deleted language to this effect from the definition of the aggravated lewd act crime. (Stats. 1981, ch. 1064, § 1, p. 4093.)

Despite this change, and despite long-standing precedent holding that a child under age 14 is legally incapable of consenting to sexual relations, some Courts of Appeal have reasoned that consent is a defense to an aggravated lewd act charge because consent is logically inconsistent with the perpetrator's use of force or duress. We disagree with this conclusion. We hold that the victim's consent is not a defense to the crime of lewd acts on a child under age 14 under any circumstances.[2] Thus, it is not error to so instruct a jury. Because the lower court here reached a contrary conclusion, we reverse the judgment.

BACKGROUND

Defendant Jaime Vargas Soto committed aggravated lewd acts against two girls, his 12-year-old cousin C. and C.'s 11-year-old friend R. C. gave two

---

[1] All statutory references are to the Penal Code. Shortly before oral argument in this case, the Legislature amended section 288. (Stats. 2010, ch. 219, § 7; see fn. 3, *post.*) Unless otherwise specified, all citations to section 288 refer to the former version of this statute. Section 288, subdivisions (a), (b) and (b)(1) are referred to as sections 288(a), 288(b), and 288(b)(1).

[2] The concurring and dissenting opinion agrees that "consent is not an *affirmative* defense to, charges under section 288(b)(1) . . . ." (Conc. & dis. opn., *post*, at p. 252.) Accordingly, our disagreement appears to center on the narrow question whether it is confusing or misleading to instruct the jury that a child's consent is not a defense to the aggravated lewd act crime.

police officers detailed accounts of defendant's sexual acts. Although she acknowledged making most of the statements the officers recorded, she disavowed them when testifying at defendant's trial. At trial, C. denied that any lewd acts took place. She claimed she lied to the police because she was angry at defendant for dating one of her friends. C. was impeached with her statements to the officers. R.'s trial testimony was consistent with her account to the police, which incriminated defendant.

Defendant lived with C. and her mother but moved after C.'s mother saw him kissing C. The jury heard evidence of a pattern preceding the charged offense. When he lived in C.'s home, defendant often held C. tight, fondled her buttocks, and "French-kissed" her. He would refuse to release her when she told him to stop and tried to push him away. He also "talk[ed] dirty" to her when they were home alone. Defendant threatened to tell C.'s mother she had a boyfriend if she did not kiss him. In one instance, C. was in the bedroom watching defendant and her brother play a video game. After her brother left the room, defendant pushed her down onto the bed, lay on top of her, and rubbed himself against her. C. told a police officer she "felt his thing and it felt nasty, but he was holding [her] so tight [she] couldn't do anything." After he moved, defendant knocked on C.'s window with a rock, saying he wanted to give her a last kiss. His behavior scared C. because she thought defendant was going to break the window and enter her room.

The first charged incident with C. occurred in April 2005, when defendant was driving C. to school. Suddenly, defendant stopped the car, reclined C.'s seat, and climbed on top of her. He kissed her, rubbed his clothed penis against her crotch, and fondled her buttocks. C. pressed her legs together and tried to turn away. Defendant tried to touch her breasts, but C. pushed his hand away. C. told defendant she wanted him to stop. She tried to leave the car, but defendant locked the door.

The second charged incident with C. occurred in May 2005 outside C.'s middle school. Before school began, defendant drove into the staff parking lot and called to C., who walked over and spoke with him. When C. noticed that the school's secretary was watching them, she motioned for defendant to drive around the corner and followed him there. The secretary became suspicious and alerted the principal.

C. wanted to talk to defendant because she was angry that he was dating her best friend, 13-year-old A. At the new meeting spot, defendant got out of the car, grabbed C. around the waist and pulled her toward him. He hugged her, fondled her, and French-kissed her. Although C. tried to pull away,

defendant grabbed her again. Holding her tightly, so that she could not move away, defendant rubbed his erect penis against C.'s thigh. Defendant eventually released C. when the bell rang and she told him she had to go to class. The principal saw C. walking toward the school and brought her into the office. After C. told him that defendant had kissed her, the principal said he intended to contact her mother and the police. C. returned to class, borrowed a phone, and called defendant. He told her not to reveal his name. Later that day, C. was questioned by a police officer, and five days later she was interviewed by a detective. She identified defendant and described the lewd acts.

C.'s statements led the police to question her friend and next-door neighbor, R. One day, when defendant saw R. standing in her doorway, he asked for her name and told her she was pretty. R. told him she was 11 years old. Because R. thought defendant was nice and good looking, she asked C. to give him her phone number.

A few days later, R. encountered defendant in a laundry room of their apartment complex. After brief conversation, defendant grabbed her and began kissing her. He tried to fondle her chest, but R. pushed his hand away. He grabbed R.'s hand, rubbed it against his erect penis, and said he wanted to have sex with her. R. tried to push him away. Later that night, defendant called R. and repeated his desire for sexual intimacy.

Sometime later, after R. had started sixth grade, defendant telephoned and said that C. wanted her to come over. When she got to C.'s apartment, however, defendant was alone. He took R. into his bedroom and started playing a pornographic movie. R. asked him to turn it off because she was embarrassed. Defendant turned off the movie, lay on the bed, took a packaged condom out of his pocket, and told R. he wanted to have sex. R. said she had to leave. As she began to walk out, she tripped over a television cable and fell onto the bed. Defendant hugged and kissed her. R. told him to stop because she had to leave. She stood up, but defendant pulled her onto the bed. He repeatedly grabbed at her buttocks and "the part between [her] legs." He tried to pull her pants down, while R. tried to push his hands away. Defendant removed his trousers but not his boxer shorts. He took R.'s hand in a firm, squeezing grip and placed it on his erect penis. Defendant said he wanted to have sex with her. After a few seconds, R. pulled her hand away and repeated that she had to leave. R. did not want to do these things with defendant, but she was afraid he would get upset and do something, like rape her. After she left the apartment, R. avoided defendant because she was afraid of him.

Based on the two incidents with C. and the incident with R. in the bedroom, defendant was charged with three counts of lewd acts on a child under 14 by use of force, violence, duress, menace, or fear. (§ 288(b)(1).) He was also charged with committing a nonforcible lewd act against R. (§ 288(a)), based on the laundry room encounter.

As to the section 288(b)(1) counts, the trial court instructed the jury with CALCRIM No. 1111. This instruction states that the People must prove "the defendant used force, violence, duress, menace or fear of immediate and unlawful bodily injury to the child or someone else" in committing the lewd act. It defines "force" and "duress" as follows: "The *force* used must be substantially different from or substantially greater than the force needed to accomplish the act itself. [¶] *Duress* means a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do or submit to something that he or she would not otherwise do or submit to." Finally, the version of CALCRIM No. 1111 read to defendant's jury stated: "It is not a defense that the child may have consented to the act."[3] Defendant did not object to the instruction.

In her closing argument, the prosecutor told the jury it could convict defendant of the section 288(b)(1) counts based on his use of force or duress. The prosecutor explained, with regard to the statutory factors of force, violence, duress, menace, and fear: "You don't have to find all of them, just one of them is enough. It's also enough if some jurors find force and some jurors find duress, but you all must unanimously agree that it was accomplished [by one or the other]." Referencing CALCRIM No. 1111, she also argued: "Consent is not a defense. It is not a defense that one or both of the girls wanted to do it or wanted to be with the defendant when this happened. Because he's the adult in the equation." The defense presented no evidence. During argument, defendant did not assert that C. or R. consented to any sexual contact. The gist of the defense was that both girls were lying. Even if the jury believed that defendant committed inappropriate touching under section 288(a), the defense maintained there was insufficient evidence of force or duress to convict under section 288(b)(1). The jury convicted on all counts, and defendant was sentenced to a total of 12 years in prison.

---

[3] A bench note to CALCRIM No. 1111 recognizes the existing disagreement in published opinions as to whether consent of the minor is an affirmative defense to a lewd act accomplished by force. Accordingly, the note recommends that this portion of the instruction, stating that consent is not a defense, "may be given on request if there is evidence of consent and the court concludes that consent is not a defense to a charge under section 288(b)(1). If the court concludes that consent is a defense and there is sufficient evidence, the court has a sua sponte duty to instruct on the defense." (Judicial Council of Cal., Crim. Jury Instns. (2011) Bench Notes to CALCRIM No. 1111, p. 932, boldface omitted.)

In an unpublished opinion, the Court of Appeal reversed and remanded for retrial on the charges involving force or duress. Although the majority declined to address whether consent is a defense to a charge of lewd conduct committed by *force*, it held that consent is a defense to the charge of lewd conduct committed by *duress* and that it is error to instruct the jury otherwise. One justice dissented from this holding, finding no error in the trial court's instruction.

We granted review on the question whether consent of the victim is a defense to the crime of aggravated lewd acts on a child under age 14.

## DISCUSSION

 Section 288(a) prohibits the commission of a lewd or lascivious act on a child under age 14 done with the intent to arouse or satisfy the sexual desires of the perpetrator or the child. Section 288(b)(1) further prohibits the commission of such an act "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ." At the time of defendant's trial, both offenses were punishable by a range of three, six, or eight years in state prison. However, a defendant convicted under section 288(b)(1) was ineligible for probation (§ 1203.066, subd. (a)(1)) and subject to full-term consecutive sentencing (§ 667.6, subds. (c), (d)). Thus, a defendant convicted under section 288(b)(1) was subject to more stringent punishment than one convicted under section 288(a).[4]

 There is no language in section 288 requiring that a lewd or lascivious act be committed against the child's will. Nevertheless, defendant argues this requirement must be read into the aggravated offense. He reasons that a sexual act committed by use of force or duress necessarily implies that the

---

[4] On September 9, 2010, the Governor signed into law the Chelsea King Child Predator Prevention Act of 2010 (Chelsea's Law). (Stats. 2010, ch. 219, § 1 et seq.) Chelsea's Law significantly increases the penalties for sex crimes against minors by imposing longer determinate sentences, indeterminate sentences for some crimes, and longer parole restrictions. (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended June 2, 2010, p. 3.) As amended, section 288(b)(1) now prescribes a sentencing range of five, eight, or 10 years for the crime of lewd or lascivious acts against a child under 14 committed by use of force, violence, duress, menace, or fear. The punishment for a violation of section 288(a) remains unchanged (three, six, or eight years). However, Chelsea's Law adds significant penal consequences for lewd act offenses that involve the infliction of bodily harm, defined as "any substantial physical injury resulting from the use of force that is more than the force necessary to commit the offense." (§ 288, subd. (i)(3), as added by Stats. 2010, ch. 219, § 7.) If the defendant personally inflicted bodily harm on the victim in committing a lewd or lascivious act on a child under age 14, newly enacted section 288, subdivision (i) requires that the defendant be sentenced to life in prison with the possibility of parole. Chelsea's Law also extends the minimum parole period for persons convicted of violating section 288(b)(1) to 20 years. (§ 3000, subd. (b)(4), as amended by Stats. 2010, ch. 219, § 19.)

perpetrator applied these pressures in order to overcome the victim's will. Evidence that the child "freely consented" to a sexual encounter would tend to rebut a finding that the perpetrator actually used force or duress to accomplish the act. Thus, defendant maintains, it is error to instruct a jury that the victim's consent is not a defense to charges under section 288(b)(1).

■ We reject defendant's analysis because its premise fails. Lack of consent by the child victim is not an element of either lewd act offense defined in section 288. Nor is willingness by the child a defense to either crime. For over 100 years, California law has consistently provided that children under age 14 cannot give valid legal consent to sexual acts with adults. (See, e.g., *People v. Verdegreen* (1895) 106 Cal. 211, 214–215 [39 P. 607].) The Legislature has drafted the child molestation laws to make issues regarding the child victim's consent immaterial *as a matter of law* in these cases.

## I. *Relevant Statutory History*

As originally enacted, section 288 did not distinguish between forcible and nonforcible lewd conduct. In 1979, as part of a sentencing overhaul for forcible sex crimes, the Legislature amended the statute to add an aggravated offense. The 1979 version of section 288(b) stated: "Any person who commits an act described in subdivision (a) [(i.e., a lewd act on a child under 14)] by use of force, violence, duress, menace, or threat of great bodily harm, and *against the will of the victim* shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, five or seven years." (Stats. 1979, ch. 944, § 6.5, p. 3254, italics added.)[5]

In 1981, the Legislature revisited section 288 when it enacted Senate Bill No. 586 (1981–1982 Reg. Sess.) (hereafter Senate Bill No. 586), the Roberti-Imbrecht-Rains-Goggin Child Sexual Abuse Prevention Act. (Stats. 1981, ch. 1064, § 5, p. 4096.) As originally introduced, this bill proposed sweeping changes to the laws defining and punishing sex crimes against minors. Among other things, Senate Bill No. 586 proposed to repeal section 288 and create two new crimes: (1) unlawful sexual conduct with a child involving sexual penetration, and (2) unlawful sexual contact with a child involving touching alone. (Sen. Bill No. 586 §§ 9, 13, as introduced Mar. 16, 1981.) If the unlawful sexual conduct or contact was committed "by force, violence, duress, menace, or threat of bodily injury," it was a felony punishable by five, seven, or nine years in state prison. (See §§ 293, subd. (b), 294, subd. (a), as proposed by Sen. Bill No. 586, § 13, as introduced Mar. 16, 1981.) Unlike the

---

[5] Section 288(b) was renumbered as section 288(b)(1) by the 1995 amendments to section 288. (Stats. 1995, ch. 890, § 1, p. 6777.)

version of section 288 they were intended to replace, these new provisions did *not* require that the sexual conduct occur "against the will of the victim." This change did not go unnoticed. For example, a Senate Judiciary Committee report analyzing an early version of the bill observed that, because of this change, a 16-year-old boy who fondled his 13-year-old girlfriend's breast would be subject to mandatory imprisonment. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 586, as amended Apr. 20, 1981, p. 5.)[6]

Senate Bill No. 586 was similar in many respects to an Assembly bill that was under consideration around the same time. Assembly Bill No. 457 (1981–1982 Reg. Sess.) (hereafter Assembly Bill No. 457) provided less severe punishment for child molestation committed within the family, however. In such situations, Assembly Bill No. 457 required mandatory imprisonment only if the lewd act was committed by force or threat and was shown to be against the will of the victim. (See Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 586, as amended Aug. 10, 1981, pp. 5–6.) The analysis of the Assembly Committee on Criminal Justice highlighted this difference between the bills, stating: "SB 586 requires imprisonment if there is force or threats involved even if it is not against the victim's will. This is contrasted with AB 457 where probation is authorized only in the unusual in-family case for such offense and not at all if it is accomplished against the will of the victim." (*Id.* at p. 7.)

On August 17, 1981, Assembly amendments added "physical intimidation" and "physical coercion" to the list of aggravating conduct in section 13 of Senate Bill No. 586's unlawful sexual conduct and sexual contact crimes. A week later, the Assembly changed Senate Bill No. 586 drastically, replacing many of its provisions with those of Assembly Bill No. 457. Among several other changes, Assembly amendments of August 25, 1981 deleted the unlawful sexual conduct and contact crimes proposed by the Senate bill and, in their place, reinstated section 288. Section 288 appeared in its original form except that the sentencing range was increased slightly and "intimidation" and "coercion" were added to the forms of aggravating conduct listed in section 288(b). The Assembly amendments retained section 288(b)'s requirement that the aggravated lewd conduct occur "against the will of the victim." (Sen. Bill No. 586, § 1, as amended Aug. 25, 1981.)

Around the time of these amendments, the Joint Committee for Revision of the Penal Code circulated a report to all members of the Senate Judiciary Committee summarizing the major differences between the Assembly and Senate bills. The report explained that, whereas the Assembly bill was "primarily a penalty bill," the Senate bill proposed to make "a major

---

[6] We have taken judicial notice of legislative history materials submitted by both sides. (Evid. Code, § 452, subd. (c).)

philosophical change in the law" based on the twin premises that "children do *not* generally lie about sexual abuse" and "the present criminal justice system does nothing to meet the special needs of the child victim of sexual abuse." (Com. for Revision of Pen. Code, Summary of Major Differences, Aug. 24, 1981, p. 1.) The report emphasized that a major difference between the two bills concerned their treatment of consent: "Various crimes are redefined in SB 586 to give maximum support and credence to the child victim. Children under age 14 are presumed to be incapable of consenting to sexual advances. The victim who is under age 14 need not prove that the sexual assault was accomplished against her will or that, in entering into a friendship with someone who later molests her, she did not solicit the act or share in that initial purpose at the time of befriending. AB 457 requires that a *victim* over the age of 10 establish that she did not *consent* to the act of sexual abuse." (*Ibid.*) More succinctly, the report stated: "AB 457 requires, where force or violence is an issue, that the prosecution prove that force or violence was *against the child victim's will.* SB 586 does not." (*Id.* at p. 2.) Clearly concerned by the Assembly's recent amendments, the authors of the report recommended that the Senate either: (1) "[k]ill AB 457," and "restore[] [Senate Bill No. 586] to its former strength in Conference"; (2) hold Assembly Bill No. 457 "for use as a 'back-up' vehicle in the event the Assembly continues to play games with SB 586"; or (3) attempt to merge the two bills. (*Id.* at p. 3.)

One day before the full Legislature took up the bills, the conference committee identified as one of the major issues in Senate Bill No. 586: "Should children under age 14 be presumed incapable of consenting to sexual advances in all instances?" (Conf., Rep. on Sen. Bill No. 586, Sept. 14, 1981, p. 2; see also Conf., Analysis of Sen. Bill No. 586, Sept. 13, 1981, p. 2.)

On September 15, 1981, Senate Bill No. 586 was amended in conference and passed by the Legislature. The final amendments to section 288(b) removed "intimidation" and "coercion" from the aggravated lewd act offense and removed the requirement that an aggravated lewd act be committed "against the will of the victim." The Legislative Counsel's Digest explained that the bill would increase the sentencing range for lewd act crimes "and would *delete* the requirement that the act, when accompanied by force, violence, duress, menace, or threat of great bodily harm, be against the will of the victim." (Legis. Counsel's Dig., Sen. Bill No. 586, 4 Stats. 1981, Summary Dig., pp. 340–341, italics added.)

The Legislature's intent on the issue of victim consent could hardly be more clear. Committee reports demonstrate that the Legislature specifically considered whether the law should require lack of consent by children under age 14. (See *Southern Cal. Gas Co. v. Public Utilities Com.* (1979) 24 Cal.3d

653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149] ["Statements in legislative committee reports concerning the statutory objects and purposes which are in accord with a reasonable interpretation of the statute are legitimate aids in determining legislative intent."].) The victim consent issue was consistently described as a key difference between the two bills. Faced with these competing bills, the Legislature enacted Senate Bill No. 586 and *deleted* language from section 288(b) that would have required proof that aggravated lewd acts were "*against the will of the victim.*" The legislative intent to do away with consent as a defense in lewd act cases is made manifest by this history.

## II. *The* People v. Cicero *Decision*

After these amendments, efforts by the appellate courts to interpret section 288(b) produced mixed results. Despite the removal of the phrase "against the will of the victim" from section 288(b), some courts continued to recognize consent as a defense to an aggravated lewd acts charge because they reasoned consent was inconsistent with the use of force and duress. Much confusion concerning the role of consent stemmed from the divided decision of the Third District Court of Appeal in *People v. Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582] (*Cicero*). The *Cicero* majority's faulty reasoning caused it to interpret section 288(b) as meaning precisely the *opposite* of what the Legislature intended. Because *Cicero*'s holding and related dicta have led other courts astray, we discuss the decision in some detail.

Cicero was charged with committing lewd acts by force on two girls, ages 11 and 12. (*Cicero, supra*, 157 Cal.App.3d at pp. 470–471.) The girls testified that 24-year-old Cicero, a twice-convicted felon, had approached and engaged them in friendly conversation as they played by a waterway. (*Id.* at pp. 469–470.) When the girls pretended to push each other in the water, Cicero proposed to throw them both in. (*Id.* at p. 470.) He lifted both girls by the waist and began to carry them. As he did so, he closed a hand around each child's crotch. The girls laughed, believing the touching was accidental. After he carried them 15 to 20 feet, Cicero sat but continued to hold each girl by the waist. When one child said she was afraid and had to go home, Cicero said they could leave if one of them kissed him. (*Ibid.*) The trial court found that one of the girls " 'gave him a little brush kiss on the cheek[;] he requested a real kiss[;] and he attempted to kiss her again.' " (*Id.* at p. 470, fn. 3.) The girls ran away and reported the incident. (*Id.* at p. 471.) After a court trial, Cicero was convicted of two counts of lewd conduct by force. (§ 288(b).) The trial court found no evidence he had used violence or threatened great bodily harm. On appeal, Cicero did not dispute he had committed lewd acts but claimed "no *force* was used as a matter of law." (*Cicero, supra*, 157 Cal.App.3d at p. 473, italics added.)

■ The Court of Appeal therefore had to determine what level of force is necessary to support an aggravated lewd act conviction. To answer that question, the majority reasoned that the harsher penal consequences of a conviction under section 288(b), as compared to section 288(a), require that the force used for a subdivision (b) conviction be "substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*Cicero, supra,* 157 Cal.App.3d at p. 474.) This formulation was, and remains, an appropriate definition of the force required for an aggravated lewd conduct conviction under section 288(b), now section 288(b)(1). (See *People v. Griffin* (2004) 33 Cal.4th 1015, 1027 [16 Cal.Rptr.3d 891, 94 P.3d 1089].) However, after concluding this definition of force was satisfied by Cicero's conduct, the majority went on to consider whether section 288(b) also required that the force cause physical injury to the victim. (*Cicero,* at p. 474.)

In casting about to answer this question, the majority turned "to the law of rape for guidance." (*Cicero, supra,* 157 Cal.App.3d at p. 475.) At this point, the decision's skein of logic began to unravel. As even the *Cicero* decision recognized, rape is an act of intercourse "accomplished against a person's will." (§ 261, subd. (a)(2); see *Cicero,* at p. 475.) Yet, just two years earlier, the Legislature had specifically *deleted* from section 288(b) a requirement that the lewd act be committed against the will of the victim. By drawing an analogy to rape at the beginning of its journey, the *Cicero* majority chose a guide destined to lead it astray.[7]

In discussing the law of rape, the majority observed that the fundamental wrong punished as rape is not the infliction of physical injury but "the violation of a woman's will and sexuality" from "intercourse undertaken without her consent." (*Cicero, supra,* 157 Cal.App.3d at p. 475.) The force used by a rapist need not cause physical harm, but it is relevant to show that the intercourse was against the victim's will. (*Ibid.*) The majority concluded the same definition of force should apply in aggravated lewd conduct cases: "It seems both logical and fair to us that if the will and sexuality of an adult woman are protected by the Penal Code, then the will and sexuality of children deserve no lesser protection. Accordingly, both logic and fairness compel the conclusion that 'force' in subdivision (b) must reasonably be given the same established meaning it has achieved in the law of rape: 'force' should be defined as a method of obtaining a child's participation in a lewd

---

[7] In discussing the law of rape, the majority relied heavily on the treatise Perkins & Boyce, Criminal Law (3d ed. 1982). (See *Cicero, supra,* 157 Cal.App.3d at p. 475.) However, the majority apparently overlooked the treatise's admonition that, while the crimes of rape and carnal knowledge of a child have much in common, "[a]t one point they cannot be discussed effectively without complete separation. The point has to do with the consent, or lack of consent on the part of [the victim]. Unlawful sexual intercourse with a girl under the age of consent is a crime whether she consents or not." (Perkins & Boyce, *supra,* at p. 209.)

act in violation of a child's will and not exclusively as a means of causing physical harm to the child." (*Cicero*, at pp. 475–476.)

■ *Cicero* based its conclusion that consent is a defense to section 288(b) on a flawed analogy between lewd acts on a child and rape. We have cautioned that significant differences between these crimes argue strongly against importing definitions from one context to the other. (*People v. Griffin, supra*, 33 Cal.4th at pp. 1026–1027.) Unlike rape, the wrong punished by the lewd acts statute is not the violation of a child's sexual autonomy, but of its sexual *innocence*. "[S]ection 288 was enacted to provide children with 'special protection' from sexual exploitation. (*People v. Olsen* (1984) 36 Cal.3d 638, 647–648 [205 Cal.Rptr. 492, 685 P.2d 52].) The statute recognizes that children are 'uniquely susceptible' to such abuse as a result of their dependence upon adults, smaller size, and relative naiveté. [Citation.] The statute also assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire." (*People v. Martinez* (1995) 11 Cal.4th 434, 443–444 [45 Cal.Rptr.2d 905, 903 P.2d 1037].)

■ Next, having been asked only to define "force," the *Cicero* majority paused to consider the meaning of "duress," a question that was not presented. It remarked that the terms "duress," "menace," and "threat" "are ordinarily used to demonstrate that someone has used some form of psychological coercion to get someone else to do something they don't want to do, i.e., something against their will." (*Cicero, supra*, 157 Cal.App.3d at p. 477.) The observation is accurate when lack of consent must be proven. The majority erred, however, in assuming that it is impossible to consider the concepts of duress, menace, or threat apart from their ultimate *effect* on a victim. A perpetrator may *use* duress, menace, or threats against a victim even if this conduct does not ultimately influence the victim's state of mind. In the context of lewd acts with a child under 14, it is the defendant's menacing behavior that aggravates the crime and brings it under section 288(b).

After its diversion into duress, the *Cicero* majority arrived at the rather startling inference that the Legislature did not intend to eliminate lack of consent from most section 288(b) cases. (*Cicero, supra*, 157 Cal.App.3d at pp. 478, 482.) It held that consent was not a defense if the child suffered demonstrable physical harm from a forcible lewd act. (*Id.* at p. 479.) However, if the child suffered no physical harm, the majority held that the prosecution was required to prove "(1) that the defendant used physical force substantially different from or substantially in excess of that required for the

lewd act and (2) that the lewd act was accomplished against the will of the victim." (*Cicero,* at p. 484.)[8]

Quite obviously, this interpretation of section 288(b) directly contradicted the 1981 legislative amendments. As Justice Regan pointed out in dissent, the majority "wr[ote] back into the subdivision precisely what the Legislature wrote out of the subdivision, so that the majority may in turn rest the conviction of the question of 'knowing consent.' " (*Cicero, supra,* 157 Cal.App.3d at p. 487 (dis. opn. of Regan, Acting P. J.).) Aware of the discrepancy between its conclusion and the "perplexing statutory amendment" (*Cicero, supra,* 157 Cal.App.3d at p. 476) to section 288(b), the majority first sought an explanation for the amendment in legislative history. After cursorily reviewing Senate Bill No. 586's chronology, however, the majority dismissed the legislative history as unenlightening. (*Cicero,* at pp. 476–477.) It observed that the phrase "against the will of the victim" was not removed from section 288(b) until the final conference and concluded the reason for this change was not apparent. (*Cicero,* at p. 477.) As we have discussed, however, a comprehensive review of the legislative history clearly shows that the Legislature deleted the phrase in order to eliminate consent as a defense to the aggravated lewd act crime.

In dissent, Justice Regan criticized the majority's analysis. Regarding the 1981 amendments to section 288(b), he explained: "[T]he Legislature simply recognized the lewd act in subdivision (a) need not be against the [victim's] will, and thus, it need not be in the use of force under subdivision (b). In fact, under the plain language of the statute, the act in subdivision (b) can be committed *with* knowing consent and still be a violation of the subdivision, if force is used. Force is limited to something the *perpetrator* applies; it is independent of the actions or thoughts of the under-14-year-old victim." (*Cicero, supra,* 157 Cal.App.3d at pp. 487–488 (dis. opn. of Regan, Acting P. J.).) Justice Regan concluded that "knowing consent" by a child under 14 "is not an affirmative defense to subdivision (a), and cannot be one to subdivision (b)." (*Cicero,* at p. 488 (dis. opn. of Regan, Acting P. J.).)

III. *Consent Is Not a Defense to Aggravated Lewd Conduct*

■ Cicero's discussion of victim consent has generated disagreement. (See, e.g., *People v. Cardenas* (1994) 21 Cal.App.4th 927, 937, fn. 7 [26 Cal.Rptr.2d 567]; *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1158 [249

---

[8] We had occasion to consider *Cicero*'s definition of "force" in *People v. Griffin, supra,* 33 Cal.4th 1015. Although we recited the first part of the definition, requiring that the force be greater than that necessary to accomplish the lewd act itself, we did not mention or consider *Cicero*'s requirement that the victim's will be overcome when forcible lewd acts have resulted in no physical harm. (*Griffin,* at p. 1027.)

Cal.Rptr. 435].) For example, in his concurring opinion in *People v. Bolander* (1994) 23 Cal.App.4th 155 [28 Cal.Rptr.2d 365], Justice Mihara noted that "*Cicero*'s legislative intent analysis led it down the wrong path." (*Id.* at p. 162 (conc. opn. of Mihara, J.).) He went on to correctly observe: "Once lack of consent was eliminated as an element of the prosecution's case, it was not reborn as a part of the definition of force. Lack of consent is not an element of the offense prohibited by section 288, subdivision (b), and the victim's consent is not an affirmative defense to such a charge. The victim's consent or lack thereof is simply immaterial." (*People v. Bolander*, at p. 163 (conc. opn. of Mihara, J.).)

In this case, the Court of Appeal majority followed *Cicero*'s flawed reasoning. We conclude Justice Mihara had the better argument in his dissent below. With respect to force, Justice Mihara explained: "While the fact that the victim actually consents to a lewd act might render the use of force unnecessary, the victim's actual consent does not eliminate the fact that the defendant actually uses violence, compulsion or constraint in the commission of the lewd act, nor does the victim's consent diminish the defendant's culpability or immunize the defendant from suffering the penal consequences that arise from a forcible lewd act." Likewise, with respect to implied coercion or duress, a "child victim's actual consent does not eliminate the fact that the perpetrator utilizes duress in the commission of the lewd act, and does not reduce the perpetrator's culpability or eliminate the penal consequences that attach due to the perpetrator's conduct."

██ When the Legislature amended section 288(b) in 1981 to delete the previous requirement that lewd acts committed by use of force, violence, duress, menace, or fear be "against the will of the victim," it effectively removed the concept of consent from child molestation cases. "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." (*Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512].) Since 1981, the lewd act crimes in section 288 have been defined based on the offender's wrongful conduct only. The victim's "consent," such as it may be, is no longer material in these cases. We cannot interpret section 288(b)(1) to reinsert what the Legislature intentionally removed. "To do so would not be interpreting the legislative intent but would be a gross example of judicial legislation in contravention of the legislative intent logically implied from the rejection by the Legislature of an identical provision." (*People v. Brannon* (1973) 32 Cal.App.3d 971, 977 [108 Cal.Rptr. 620].)

██ By intentionally removing the phrase "against the will of the victim," the Legislature kept the focus on the conduct of the assailant. It recognized that there is an inherent imbalance of power in an encounter between a child

and an adult bent on sexual conduct. It acted to protect young children, who may make ill-advised "choices" when under the coercive influence of an overreaching adult. Accordingly, it set 14 as the age at which a child may legally give consent to sexual conduct. This was a legitimate exercise of the Legislature's authority. "[T]he Legislature has determined that children are uniquely susceptible to 'outrage' and exploitation" and has accordingly broadened the range of sexual acts with children deemed criminal. (*People v. Scott* (1994) 9 Cal.4th 331, 341–342 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; cf. *People v. Leal* (2004) 33 Cal.4th 999, 1008 [16 Cal.Rptr.3d 869, 94 P.3d 1071] [Legislature could define "duress" more broadly in § 288(b)(1) than in the rape and spousal rape statutes to protect children under 14 from sexual abuse].)

■■■ Despite this clear legislative intent, defendant repeats *Cicero*'s error of assuming lack of consent must be proven when the prosecution relies on duress because this term necessarily implies that the victim's will was overcome. However, the legal definition of duress is objective in nature and not dependent on the response exhibited by a particular victim. In *People v. Leal, supra,* 33 Cal.4th 999, we held that "duress," as used in section 288(b)(1), means " 'a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce *a reasonable person of ordinary susceptibilities* to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' " (*Leal*, at p. 1004, second italics added, quoting *People v. Pitmon* (1985) 170 Cal.App.3d 38, 50 [216 Cal.Rptr. 221].)[9] Because duress is measured by a purely objective standard, a jury could find that the defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to this behavior.[10] Consistent with the language of section 288 and the clear intent of the Legislature, the focus must be on the defendant's wrongful act, not the victim's response to it.

Taking a different view of history, the concurring and dissenting opinion asserts that "[a] virtually unbroken line of authority following the 1981

[9] The definition of "duress" in CALCRIM No. 1111 is based on *People v. Leal, supra,* 33 Cal.4th at page 1004. To make even more clear that the focus is on the perpetrator's actions, not the victim's response, this part of the instruction should be amended along the following lines: "Duress means *the use of* a direct or implied threat of force, violence, danger, hardship, or retribution *sufficient to cause* a reasonable person to do [or submit to] something that he or she would not otherwise do [or submit to]. When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the child and (his/her) relationship to the defendant."

[10] The concurring and dissenting opinion complains this conclusion "distorts the holdings of *Pitmon* and *Leal*." (Conc. & dis. opn., *post,* at p. 252.) To the contrary, the analysis flows directly from the explicit definition of "duress" stated in those cases. That the definition was formulated in the context of a different legal issue does not make it irrelevant to the question we explore here.

amendments, from *Cicero, supra*, 157 Cal.App.3d 465, and *Pitmon, supra*, 170 Cal.App.3d 38, through our own 2004 decision in *Leal, supra*, 33 Cal.4th 999, has interpreted duress, menace and threat as behavior inconsistent with the victim's freely given consent." (Conc. & dis. opn., *post*, at p. 254.) In fact, *no* decision has actually held that consent is a defense when it is alleged that lewd acts were accomplished by duress. As noted, the issue of duress was not presented in *Cicero*; therefore, the majority's discussion of it was dictum. Although other decisions have repeated *Cicero*'s dictum, none has directly ruled that a child victim's consent negates a finding of duress under section 288(b)(1). For example, as in *Cicero*, the issue in *People v. Quinones, supra*, 202 Cal.App.3d 1154 was force, not duress. The court stated in dicta that it agreed with *Cicero*'s observations on duress but disagreed with *Cicero*'s extension of this reasoning to lewd acts committed by force. (*Quinones*, at p. 1158.) While duress was at issue in *Pitmon*, consent was not. There, in finding that sufficient evidence supported a section 288(b) conviction, a panel of the same court that decided *Cicero* remarked that the defendant's conduct had "prompted [the child] against his will to participate in the sexual acts" (*Pitmon*, at p. 51), but no argument had ever been made that the sex acts were consensual.

██ Because no case following the 1981 amendments to section 288(b) has specifically held that consent is a defense to aggravated lewd acts on a child under 14, we also reject the related argument that the Legislature's failure to alter section 288(b)(1) after *Cicero, supra*, 157 Cal.App.3d 465 indicates it has acquiesced in *Cicero*'s interpretation of "duress." When the Legislature fails to act in the face of a direct holding, a conclusion of acquiescence may be in order. However, it is a slender reed to depend on indeed to argue that the Legislature acquiesced to dictum in a case that has been much criticized and that even the concurring and dissenting opinion acknowledges "was not free from error." (Conc. & dis. opn., *post*, at p. 250.)

The approach we endorse today is venerable. California law has long recognized that consent is not a defense when the victim of a sex crime is a child under age 14. Many early decisions under the rape statute (§ 261) held that a minor could not legally consent to intercourse. (E.g., *People v. Verdegreen, supra*, 106 Cal. at pp. 214–215; *People v. Gordon* (1886) 70 Cal. 467, 469 [11 P. 762].) This incapacity was conclusively presumed notwithstanding any "actual consent" the child may have conveyed. (*Verdegreen*, at p. 214.) Moreover, the presumption applied even when the alleged crime was not rape but an assault with intent to commit rape. In a similar argument to the one advanced here, Verdegreen argued consent was a defense to such an assault because the crime necessarily implied resistance by the person assaulted. (*Id.* at p. 213.) We disagreed, explaining, "It is true that an assault implies force by the assailant and resistance by the one assaulted; and that one is not, in legal contemplation, injured by a consensual act. But these

principles have no application to a case where under the law there *can be* no consent. Here the law implies incapacity to give consent, and this implication is *conclusive*. In such case the female is to be regarded as resisting, no matter what the actual state of her mind may be at the time. The law resists for her." (*Id.* at p. 215, italics added.)[11]

■ Honoring the clear legislative intent expressed in the plain language of section 288(b)(1), we hold that consent of the victim is not a defense to the crime of aggravated lewd conduct on a child under age 14. The prosecution need not prove that a lewd act committed by use of force, violence, duress, menace, or fear was also against the victim's will. To the extent they are inconsistent with this holding, we disapprove *People v. Cicero, supra,* 157 Cal.App.3d 465, and the cases following it.[12]

## DISPOSITION

The judgment of the Court of Appeal reversing defendant's convictions on counts 1, 2 and 4 is reversed.

Baxter, J., Chin, J., and George, J.,* concurred.

---

[11] The Legislature later raised the age of consent to 18 (Stats. 1913, ch. 122, § 1, p. 212) and removed the crime of unlawful sexual intercourse with a minor from the rape statute (§ 261.5, added by Stats. 1970, ch. 1301, §§ 1, 2, pp. 2405–2406). These changes led us to recognize a defense to statutory rape when the accused had a good faith, reasonable belief that the victim was 18 or older. (*People v. Hernandez* (1964) 61 Cal.2d 529, 536 [39 Cal.Rptr. 361, 393 P.2d 673].) However, no legislative action or judicial decision has altered the long-standing presumption that children *under age 14* cannot give legal consent to sexual activity. We made this clear in *People v. Olsen, supra,* 36 Cal.3d 638, when we refused to extend *Hernandez*'s mistake-of-age defense to section 288. Whereas statutory rape involves an element of consent, in that it is possible to mistakenly believe a female is older than 18 and capable of consenting to intercourse, we stated that " '[a] *violation of section 288 does not involve consent of any sort,* thereby placing the public policies underlying it and statutory rape on different footings.' " (*Olsen,* at p. 645, italics added, quoting *People v. Toliver* (1969) 270 Cal.App.2d 492, 496 [75 Cal.Rptr. 819].) We observed that section 288 was enacted to serve a "strong public policy to protect children of tender years" (*Olsen,* at p. 646) and discussed several statutes that afford special protections to children under age 14 (*id.* at pp. 647–649).

[12] Specifically, we disapprove of statements in *People v. Cicero, supra,* 157 Cal.App.3d 465 suggesting that consent of the victim is a defense to a charge of lewd acts accomplished by use of force, violence, duress, menace, or fear. We also disapprove of similar statements in *People v. Cochran* (2002) 103 Cal.App.4th 8, 15–16 [126 Cal.Rptr.2d 416], *People v. Bolander, supra,* 23 Cal.App.4th 155, 160–161, *People v. Neel* (1993) 19 Cal.App.4th 1784, 1787 [24 Cal.Rptr.2d 293], *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1249–1251 [268 Cal.Rptr. 884], *People v. Quinones, supra,* 202 Cal.App.3d 1154, 1158, *People v. Mendibles* (1988) 199 Cal.App.3d 1277, 1306 [245 Cal.Rptr. 553], *People v. Lusk* (1985) 170 Cal.App.3d 764, 770–771 [216 Cal.Rptr. 544], and *People v. Pitmon, supra,* 170 Cal.App.3d 38, 51.

*Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WERDEGAR, J.,** Concurring and Dissenting.—I concur in the result. I dissent, however, from most of the majority's conclusions and analysis.

In defendant's trial for multiple counts of committing lewd acts with children under 14 years of age by use of force, violence, duress, menace or fear of bodily injury (Pen. Code, § 288, subd. (b)(1)),[1] the jury was instructed: "It is not a defense that the child may have consented to the act." Because consent of the victim is inconsistent · with the use of duress to commit a lewd act, I would hold it was error to so instruct in this case, where duress as well as force was at issue. I would, however, find the error harmless because, in light of the evidence and arguments, it is not reasonably likely (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) the jury would have failed to find force or duress had the court refrained from giving the instruction. On this ground (harmless error), I concur in the judgment reversing the judgment of the Court of Appeal.

Section 288, subdivision (a) prohibits the commission of any lewd or lascivious act on a child under the age of 14 with the intent of arousing or satisfying the sexual desires of the perpetrator or the child. Subdivision (b)(1) specially prohibits the commission of such acts "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ." Although at the time of defendant's crimes both offenses specified punishment by three, six or eight years in state prison, a conviction under section 288, subdivision (b)(1) (section 288(b)(1)) had and has significant consequences in restricting the availability of probation and in determining consecutive sentencing. (See §§ 667.6, 1203.066.)[2]

When the prosecution, to prove a violation of section 288(b)(1), relies in whole or in part on a theory of duress, menace or threat of bodily injury, an instruction that consent is no defense is potentially confusing. The statutory terms "duress, menace, or fear of immediate and unlawful bodily injury" (§ 288(b)(1)), used with their ordinary meanings as they are here, refer to coercion. To commit a lewd act *"by use of"* such coercion (*ibid.*, italics added) necessarily means to coerce the victim into acquiescing to the act. To tell jurors consent is no defense to such a charge could confuse them as to whether evidence of freely given consent should be considered on the issue of whether the act was committed by use of duress, menace or fear. The 1981

---

[1] All statutory references are to the Penal Code.

[2] As the majority notes (maj. opn., *ante*, at p. 237, fn. 4), the sentence for violation of section 288(b)(1) has since been increased to five, eight or 10 years in prison. This change makes even clearer that the Legislature regards section 288(b)(1) offenses as significantly aggravated over offenses under section 288, subdivision (a).

amendments to section 288(b),[3] on which the majority primarily relies, did not focus on this aspect of the statute and cannot abrogate the statute's plain language. That language, referring to commission of the lewd act by coercive means, must take precedence over general, nonspecific indications of a legislative desire to reduce the role played by consent in section 288 cases, a desire, as I discuss, seemingly related to punishment, not to proof of the offense's elements.

"Duress," in section 288(b)(1), is not a legal term of art; it is used in its ordinary sense of " 'stringent compulsion by threat of danger, hardship, or retribution . . . .' " (*People v. Leal* (2004) 33 Cal.4th 999, 1009 [16 Cal.Rptr.3d 869, 94 P.3d 1071], italics omitted, quoting Webster's 3d New Internat. Dict. (2002) p. 703; see also Random House Dict. of the English Language (2d ed. 1987) p. 607 ["compulsion by threat or force; coercion; constraint"].) To commit a lewd act on a child "by use of . . . duress" (§ 288(b)(1)), then, is to use a threat of danger, hardship or retribution to *compel* the child's compliance with the act. In a violation of section 288(b)(1) by duress, the duress is employed to overcome the child's will, making him or her perform or acquiesce in the lewd act.

The decision in *People v. Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582] (*Cicero*) was not free from error, but on this point the decision was clearly correct and, until now, has stood unchallenged. The *Cicero* court observed that the terms "duress," "menace" and "threat" "are ordinarily used to demonstrate that someone has used some form of psychological coercion to get someone else to do something they don't want to do, i.e., something against their will. Consequently, if the concept of violation of will is removed from these words, they are left, like shells on a beach, without substance." (*Id.* at p. 477.) "The essential function played by the concept of 'menace' is to avoid or vitiate consent to an act, so that the act cannot be said to constitute an exercise of free will. . . . [¶] In light of these authorities, we conclude it is semantically unreasonable to amputate from the concept of 'menace' the requirement that an act be undertaken 'against the will of the victim.' The latter concept is necessary to any coherent meaning of 'menace.' We believe similar arguments could be constructed to demonstrate the terms 'duress' and

---

[3] As added to section 288 by amendment in 1979, subdivision (b) prohibited the commission of a lewd act "by use of force, violence, duress, menace, or threat of great bodily harm, and against the will of the victim . . . ." (Stats. 1979, ch. 944, § 6.5, p. 3254.) The reference to "against the will of the victim" was deleted in 1981. (Stats. 1981, ch. 1064, § 1, p. 4093.)

In 1995, subdivision (b) was divided into two paragraphs; the former text was placed in subdivision (b)(1) while a new subdivision (b)(2), relating to abuse of dependent adults, was added. (Stats. 1995, ch. 890, § 1, p. 6777.) I refer to the prohibition on lewd acts with a child by force, violence, etc., as section 288(b) or section 288(b)(1), according to the statute's organization at the time under discussion.

'threats' have no useful meaning absent a consideration of their effect on the will of a victim." (*Id.* at p. 478.)[4]

The year after *Cicero* was decided, the court in *People v. Pitmon* (1985) 170 Cal.App.3d 38, 50 [216 Cal.Rptr. 221] (*Pitmon*) held "duress" in section 288(b) should be interpreted according to its ordinary meaning as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities" to perform or acquiesce in a lewd act. Analyzing the evidence at trial, the court concluded the charged crimes had been committed by use of duress; "defendant's actions constituted an implied threat of force, violence, hardship or retribution *which prompted* [*the child*] *against his will to participate in the sexual acts.*" (*Id.* at p. 51, italics added.)

*Cicero* was further followed on this issue in *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1158 [249 Cal.Rptr. 435], where the appellate court agreed that "a conviction based on 'duress,' 'menace,' or 'threat of great bodily harm' necessarily implies that the 'will of the victim' has been overcome," though the court disagreed with *Cicero*'s parallel holding as to force, discussed below. (See also *People v. Cochran* (2002) 103 Cal.App.4th 8, 15–16 [126 Cal.Rptr.2d 416] [evidence supported a duress finding where victim "engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent."]; *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1321 [116 Cal.Rptr.2d 700] [ "Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat . . . .' "].)

These decisions, forming an unbroken line from 1981 until the majority opinion in this case, clearly establish that "duress" and its associated terms "menace" and "fear of . . . bodily injury" are used in section 288(b)(1) in their ordinary meanings, and that to commit a lewd act "by use of" one of these means, as prohibited in section 288(b)(1), is to coerce the victim, by direct or implied threat or by exploiting the victim's fear, into performing or acquiescing in the lewd act against his or her will. To coerce an act by duress, menace or fear "is to avoid or vitiate consent to [the] act, so that the act cannot be said to constitute an exercise of free will." (*Cicero, supra,* 157 Cal.App.3d at p. 478.) Such coercion is thus inconsistent with the exercise of the victim's "freely given consent." (*People v. Cochran, supra,* 103 Cal.App.4th at pp. 15–16.)

---

[4] Until 1986, section 288(b) referred to "threat of great bodily harm." The 1986 amendment substituted the current wording, "fear of immediate and unlawful bodily injury." (Stats. 1986, ch. 1299, § 4, p. 4595.)

Because the victim's freely given consent is inconsistent with the commission of a lewd act by use of duress, menace or fear, as section 288(b)(1) employs those terms, to instruct a jury weighing such charges that the child's consent is not a defense is potentially confusing. While consent is not an *affirmative* defense to charges under section 288(b)(1), evidence of consent tends to negate the statutory element that the lewd act be committed by use of duress, menace or fear. An instruction that consent is not a defense might lead a reasonable juror to improperly disregard any evidence of freely given consent put forward by the defense, rather than considering that evidence, in deciding whether the prosecution has met its burden to prove the child's compliance was in fact produced by duress, menace or fear of bodily injury.

Against the conclusion that commission of a lewd act by duress, menace or fear is inconsistent with the victim's consent, the majority cites the description of duress for purposes of section 288(b)—first offered in *Pitmon, supra*, 170 Cal.App.3d at page 50, and later quoted and adopted by this court in *People v. Leal, supra*, 33 Cal.4th at page 1004 (*Leal*)—as a threat "sufficient to coerce a reasonable person of ordinary susceptibilities" to perform the lewd act. Because this states an objective standard, the majority reasons, "a jury could find that the defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to this behavior." (Maj. opn., *ante*, at p. 246.)

The majority's conclusion distorts the holdings of *Pitmon* and *Leal*. In fact, these cases are inapposite to the issue here. The definitional discussion in both cases went to the *type and degree of threat* that section 288(b) requires, not to whether a threat must actually overcome the victim's will. In *Pitmon*, the question was whether a threat of imminent death or great bodily harm (as specified in § 26) was required (*Pitmon* held it was not); in *Leal*, the issue was whether a threat of "hardship," included in the *Pitmon* definition, sufficed (*Leal* held it did). (See *Leal, supra*, 33 Cal.4th at pp. 1003–1010; *Pitmon, supra*, 170 Cal.App.3d at pp. 48–50.)

Neither *Pitmon* nor *Leal* held or even suggested that whether the victim is actually coerced into participating in a lewd act, or freely consents to it, is irrelevant under section 288(b). To the contrary, in *Leal* we quoted with approval *Pitmon*'s remark that section 288(b) punished " '*the obtaining of a child's participation in a lewd act in violation of the child's will.*' " (*Leal, supra*, 33 Cal.4th at p. 1009, italics added, quoting *Pitmon, supra*, 170 Cal.App.3d at p. 49.) As explained earlier, the court in *Pitmon*, consistent with that understanding, applied its definition to determine that the duress used was not only of an objectively sufficient magnitude, but actually had the effect of coercing the victim into participating: the court concluded that the defendant's threats "prompted [the child] against his will to participate in the sexual

acts" and that the defendant had thus "accomplished his lewd acts by means of duress." (*Pitmon*, at p. 51.) In holding the People must show that the defendant's threats were objectively strong enough to coerce a reasonable person, then, neither *Pitmon* nor *Leal* suggested the People need *not* show these threats *actually coerced* the child into acquiescing to the lewd act.

The majority also reasons that the Legislature, when in 1981 it deleted the phrase "against the will of the victim" from section 288(b), intended to eliminate any consideration of consent from the adjudication of charges under this section. They rely on the legislative history of the 1981 amendment, which was enacted by Senate Bill No. 586 (1981–1982 Reg. Sess.) (hereafter Senate Bill No. 586). As the majority explains, the requirement that a section 288(b) offense be committed "against the will of the victim" was removed in a September 15, 1981, conference reconciling provisions of Senate Bill No. 586 with those of a competing bill, Assembly Bill No. 457 (1981–1982 Reg. Sess.) (hereafter Assembly Bill No. 457), which was not passed. (Maj. opn., *ante*, at pp. 238–241.) I find the legislative history less than definitive on the present issue.

The majority relies on an August 24, 1981, report by the Joint Legislative Committee for Revision of the Penal Code, which was distributed to members of the Senate Judiciary Committee. This report disparaged the Assembly proposal allowing probation in certain cases where the child solicited the lewd act[5] as requiring the victim to "establish that she did not <u>consent</u> to the act of sexual abuse" and as reflecting a belief "that most children want to be molested, that there exist 11 year old prostitutes who freely and willingly choose that profession, and that those who molest children should not be harshly treated by the courts." (J. Com. for Revision of Pen. Code, Summary of Major Differences, Aug. 24, 1981, p. 1.) The report reflects a general division between the Assembly and the Senate over whether and how consent should affect *punishment* for lewd acts with children; it sheds no light on how Senate Bill No. 586's deletion of "against the will of the victim" from section 288(b) would affect the prosecution's burden of proving a lewd act had been committed by duress, violence or threat of bodily harm. It is of limited probative force on the intent of the Legislature, in any event, because there is no indication the report was presented either to the conference committee, which agreed to the change, or to the full membership of the two houses, which approved it.

---

[5] Among other things, Assembly Bill No. 457 would have allowed probation in some cases where the defendant had befriended the victim for sexual purposes but the victim solicited the sexual act or shared in the perpetrator's sexual intent at the time he or she was befriended. (Assem. Bill No. 457, § 3, as amended in Assem., May 6, 1981.) This proposed provision was assertedly designed to exempt from the state prison mandate offenses involving "the 13 year old prostitute and the Lolita situations." (Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 586, as amended Aug. 10, 1981, p. 7.)

Also of interest is a conference committee report reviewing "Major Issues" concerning Senate Bill No. 586, dated September 14, 1981 (the day before the conference committee reported the bill out and it was passed by both houses). Among the issues this report identified were "2. Should children under age 14 be presumed incapable of consenting to sexual advances in all instances?" and "3. In cases where the offender made friends with the victim for illicit sexual purposes should the prosecution have to establish that the victim neither consented nor solicited the act?" (Conf. Rep. on Sen. Bill No. 586, Sept. 14, 1981, pp. 2–3.) The conference report does not mention the Senate's proposed deletion of "against the will of the victim" from section 288(b); indeed, the wording of question No. 3 invokes the language of the probation provision proposed in Assembly Bill No. 457. (See fn. 5, *ante*.) At this critical stage, then, when the conference committee sought to resolve differences between the Senate and Assembly bills, debate focused not on the parameters of proof that a lewd act was committed by force, violence, duress, menace or threats under section 288(b), but on the Assembly provision allowing probation in child prostitution cases.

A fair reading of the 1981 amendment and its legislative history suggests the Legislature wanted, in relation to punishment, to deemphasize considerations of the child victim's consent or lack of consent in section 288 prosecutions. Significantly, the Legislature retained in section 288(b) an element—the commission of the lewd act "by use of" duress, menace or threats—inherently inconsistent with freely given consent. Nothing in the language or history of Senate Bill No. 586 indicates the bill's drafters or the legislators who passed it grappled specifically with how a lewd act could be committed by use of duress, menace or threat without overcoming the victim's free will. The plain language of the statute, referring to commission of the lewd act by coercive means, must take precedence over general indications of a legislative desire to reduce or eliminate the role played by consent in punishing section 288 offenses. (See *Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 [85 Cal.Rptr.3d 466, 195 P.3d 1049] ["We may not rewrite the statute to conform to an assumed intention that does not appear in its language."].)

My conclusion in this regard is reinforced by the Legislature's subsequent acquiescence in 20 years of unanimous judicial opinion holding that commission of a lewd act by duress, menace or threat in section 288(b) requires coercive conduct used to overcome the victim's free will. A virtually unbroken line of authority following the 1981 amendments, from *Cicero, supra*, 157 Cal.App.3d 465, and *Pitmon, supra*, 170 Cal.App.3d 38, through our own 2004 decision in *Leal, supra*, 33 Cal.4th 999, has interpreted duress, menace and threat as behavior inconsistent with the victim's freely given consent. The Legislature amended section 288(b) several times in that period without

any change affecting this interpretation, leading to an inference of ratification. (*People v. Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].)

The victim's consent, of course, does not negate any element of a charge under section 288, *subdivision (a)*. That statute establishes 14 years as a minimum age, before which children are conclusively presumed incapable of consent to lewd acts whatever their actual state of mind. In that sense the majority is correct that California has long recognized "consent is not a defense when the victim of a sex crime is a child under age 14." (Maj. opn., *ante*, at p. 247.) But our concern here is solely with a particular aggravated form of the offense, section 288(b)(1). That evidence of consent can under some circumstances tend to negate an element of that specific aggravated offense is not inconsistent with the principle that children younger than 14 years cannot legally consent to sexual acts. Consent in no way prevents a perpetrator's prosecution under section 288, subdivision (a).[6]

On the commission of a section 288(b)(1) offense by force or violence, I would reach a different conclusion than on commission of the crime by duress, menace or fear. Though *Cicero* held force, as well, must be shown to have overcome the will of the child victim, this aspect of *Cicero* has since been criticized in *People v. Quinones, supra*, 202 Cal.App.3d at page 1158, and in a separate opinion in *People v. Bolander* (1994) 23 Cal.App.4th 155, 162–163 [28 Cal.Rptr.2d 365] (conc. opn. of Mihara, J.). Consequently, in this respect, previous decisions established no clear rule in which the Legislature can be deemed to have acquiesced.

Moreover, unlike duress or menace, the use of force or violence to commit a lewd act is not *necessarily* inconsistent with the victim's consent. While commission of a sex act by duress inherently involves coercion, use of force is a more general concept. Force and violence[7] certainly are most commonly employed to overcome the victim's free will, as in forcible rape. (§ 261,

---

[6] *People v. Verdegreen* (1895) 106 Cal. 211 [39 P. 607], construing section 220 (assault with the intent to commit rape) before section 288 was enacted, is not illuminating on the present question. We did not consider there whether evidence of consent was relevant to a charge the sexual act was committed by use of duress, which was not an element of section 220. Because section 288 did not yet exist, moreover, the question presented in *Verdegreen* was not whether evidence of consent could negate an element of an *aggravated* form of that offense, but whether the defendant was entitled to an instruction that consent was a *complete* defense to the charge of assault. (*Verdegreen*, at pp. 212–213.)

[7] "Force is a general term. When force causes physical harm, it is commonly called 'violence.' (Webster's Collegiate Dict. (10th ed.) p. 1319.)" (*People v. Bolander, supra*, 23 Cal.App.4th at p. 163, fn. 3 (conc. opn. of Mihara, J.); see also Random House Dict. of the English Language, *supra*, p. 2124 [defining violence as "swift and intense force" or "rough or injurious physical force, action, or treatment"].)

subd. (a)(2); see *People v. Griffin* (2004) 33 Cal.4th 1015, 1027 [16 Cal.Rptr.3d 891, 94 P.3d 1089].) But an adult can freely agree to be subjected to force or even violence as a means, for instance, of achieving sexual stimulation and gratification for the individual or another person. More pertinent to section 288, involving children, physical force is sometimes used to transport or position a child in order to facilitate a lewd act, as in *Cicero* itself, where the adult perpetrator picked up the two young victims as part of what seemed to them a game, using the opportunity of this contact to fondle them. (*Cicero, supra*, 157 Cal.App.3d at p. 470.) To say a person consented to the use of force or violence to commit a sexual act may describe a rare event, but it is not inherently a contradiction in terms.

It follows that in the unusual section 288(b)(1) case where no theory of commission by duress, menace or fear is presented and the prosecution's theory of force or violence does not include the use of those means to overcome the victim's will, the court could correctly (albeit superfluously) instruct the jury that the victim's consent is not a defense to the charges. The present case, however, was of a more common variety: the prosecution relied on both force *and* duress, and even as to force the prosecution's theory was that defendant used force to restrain the victims and overcome their wills. In the circumstances of this case, defendant's alleged commission of the acts by force or duress could have been negated by the victims' freely given consent. For reasons already given, then, the instruction that consent was not a defense was potentially misleading. A reasonable juror could have been confused as to whether any evidence that C. or R. freely consented to the lewd acts should be considered on the issue of whether defendant committed the acts by force or duress.

I disagree, however, with defendant that giving the instruction violated his federal constitutional rights and is either reversible per se or subject to the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. While potentially confusing on aspects of the issue, the instruction did not purport to *define the element* of commission of the offense by use of force, violence, duress, menace or fear. That element was correctly defined for the jury through other instructions. At most, the instruction that consent is not a defense could have been read as *inconsistent* with the instructions defining the force or duress element. The error thus did not constitute a "[m]isdescription" of an element requiring either automatic reversal or *Chapman* prejudice review. (*People v. Hagen* (1998) 19 Cal.4th 652, 670 [80 Cal.Rptr.2d 24, 967 P.2d 563].) Neither per se reversal nor the *Chapman* standard being implicated by the circumstances here, I would apply the prejudice standard applicable to errors of state law:

reversal is appropriate only if omission of the erroneous instruction would have been reasonably likely to produce a more favorable result on the section 288(b)(1) charges. (*People v. Watson, supra*, 46 Cal.2d at p. 836.)

In light of the evidence and argument before the jury, the error was not prejudicial. As the People note, there was no evidence of consent before the jury. C.'s friendly relationship with defendant, her solicitation of conversation with him in the school parking lot, and her recantation of her police statements incriminating him, as well as R.'s affectionate behavior to defendant in his bedroom, gave some potential grounds for *speculating* they consented to being kissed and fondled on the charged occasions, but there was no actual evidence, direct or circumstantial, that this was so.

Nor was consent, as such, emphasized in the arguments to the jury. The prosecutor, reviewing for the jury the instructions they would be given, briefly referred to the instruction that consent was no defense. But in the portion of his argument addressing the force or duress element of section 288(b)(1), the prosecutor made no mention of evidence of consent. He argued simply that defendant had restrained and held the victims by force, had coerced C.'s compliance by threatening retribution, and had exploited R.'s fear of bodily injury, using his physical dominance over and his friendly relationships with both young victims, and his family connection with C., to add weight and credibility to the duress and fear. On the defense side, counsel argued that as to C. "there was no force, no threats, no duress." Counsel asserted the prosecution had not produced any corroboration that force was used in the car incident, and argued C.'s statements that she found defendant's actions frightening and disgusting were inconsistent with the fact she sought to talk with him privately outside her school. With regard to the incident with R. in defendant's bedroom, defense counsel maintained R. had testified inconsistently as to how she came to be lying on the bed and hugging defendant, and argued her testimony that she feared a possible future rape was inconsistent with the fact she had stayed with defendant in his bedroom for an extended period of time.

The potentially confusing instruction on consent, therefore, did not prevent the parties from fairly and fully presenting to the jury the factual issue of whether defendant committed the lewd acts charged in counts 1, 2 and 4 by use of force or duress. The jury found he had committed the acts by these means. Given the correct definitional instructions on force and duress, the absence of evidence of consent, and the limited role the concept played in the arguments of counsel, a different result was not reasonably likely even absent the potentially confusing consent instruction.

For the above reasons, I concur in the court's disposition reversing the judgment of the Court of Appeal.

Kennard, J., and Moreno, J., concurred.