Filed 12/16/14  P. v. Mroczko CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL MATTHEW MROCZKO,<br><br>    Defendant and Appellant. | G050274<br><br>(Super. Ct. No. SWF1200334)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Dennis A. McConaghy, Judge.  (Retired judge of the Riv. Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Susan K. Shaler for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Michael Matthew Mroczko of one count of aggravated sexual assault of a child under 14 (digital penetration) (Pen. Code, § 269, subd. (a)(5); count 1),[1] two counts of forcible lewd conduct with a child under 14 (§ 288, subd. (b)(1); counts 2, 5) one count of nonforcible lewd conduct with a child under 14 (§ 288, subd. (a); count 3), two counts of furnishing marijuana to a child under age 14 (Health & Saf. Code, § 11361, subd. (a); counts 4, 8), three counts of aggravated sexual assault of a child under 14 (forcible rape) (§ 269, subd. (a)(1); counts 6, 7, 9), and one count of contributing to the delinquency of a minor (§ 272, subd. (a)(1); count 10).

The trial court sentenced defendant to four consecutive indeterminate terms of 15 years to life on counts 1, 6, 7, and 9, three consecutive determinate terms of eight years on counts 2, 3, and 5, two concurrent determinate terms of five years on counts 4 and 8, and a concurrent determinate term of 365 days on count 10.

Defendant claims the trial court improperly excluded evidence his child victim consented to the acts comprising counts 1, 2, 5, 6, 7, and 9, and he challenges the sufficiency of the evidence to prove he committed these crimes by force, violence, duress, menace or fear of bodily injury. Finally, he argues the trial court committed instructional error by failing to instruct on simple battery as a lesser included offense of committing a lewd act with a child. We find no merit in any of these claims and affirm the judgment.

## FACTS

In 2009, then 11-year-old Jane Doe (Doe) lived in New Mexico with her mother, Joanna P., and her two younger siblings. Defendant, who was then 31 years old, moved from California to New Mexico to live with them, but he soon returned to California after he and Joanna had a particularly intense argument. After defendant left,

_____

[1] All further statutory references are to the Penal Code unless otherwise noted.

Joanna attempted suicide and spent time in a psychiatric hospital. Upon Joanna's release from the hospital, she took Doe and her siblings to California, and in March 2010, Joanna and defendant reconciled. The charged crimes occurred between April and November 2010 when Doe was 12 years old.

Doe reported that after the marriage, Joanna abused alcohol and drugs and became physically abusive and neglectful of her children. At the same time, Doe, a petite girl who was about five feet two inches tall, became close to defendant, who was around six feet tall and weighed 240 pounds. In fact, Doe stated she thought of defendant as her father and called him, "Dad."

Once in California, Doe and her family lived with Joanna's mother and uncle in Riverside, but they soon moved into a one-room garage in a Pomona storage facility with defendant. Defendant and Joanna shared a bed while Doe slept on an air mattress and her two younger siblings slept on a regular mattress.

One night, in the first month after the family moved into the storage unit, Doe could not sleep. Defendant got up and joined her on the air mattress. He lay down behind Doe, put his hand down her underwear, pulled her underwear to the side, and put his fingers in her vagina. Doe tried to push defendant away, but he told her to "Just be quiet." Although Doe felt pain and a snap inside, she also reported being shocked and she did not say anything. Afterward, defendant told Doe not to tell anyone what had occurred because he could go to jail and then Doe and her mother would have no place to live. Doe said she wanted to tell someone, but she was afraid of what might happen to her family.

On another occasion while they lived in the storage facility, defendant came up behind Doe and touched her breasts over her clothes when she bent over to get a soda out of a cooler. Doe flinched and moved away from him.

After living in the storage facility for about a month, Joanna and the children moved to a shelter while defendant stayed with some friends, Stevie and Aleah.

3

During that time, Doe spent one night with defendant. That night, Doe and defendant slept on a fold-out bed in Stevie and Aleah's living room. During the night, Aleah walked out of her bedroom and saw defendant touching Doe's breasts over her bra. Aleah became angry, which frightened Doe because she was afraid to be separated from her siblings by child protective services. Joanna had previously explained to her that when children were taken into foster care, "they switch you up." Defendant told Aleah he was just looking at bug bites, but that did not persuade her or Stevie.

Shortly after this incident, defendant, Joanna, and the children moved to a motel in Hemet. Defendant and Joanna shared a bedroom while Doe and her siblings slept in the living room on the floor and couch. Doe frequently saw defendant and Joanna smoke marijuana, and they allowed her to smoke marijuana with them if she wanted to. One night after Doe had smoked marijuana and "drank a little bit" of alcohol, defendant joined her on the couch while her siblings were asleep on the floor. He pulled down her shorts and underwear and put his finger in her vagina.

On another occasion, defendant and Doe were alone inside the motel room when defendant threw Doe on the bed, unbuckled his pants, and then pulled her pants and underwear off. She kicked at defendant and tried to hold her knees together, but defendant forced her legs apart. He then inserted his penis into her vagina while holding her down by the shoulders. Doe felt a tearing sensation and pain. She threatened to tell her mother, but defendant said, "She wouldn't believe you." Doe then threatened to tell defendant's sister, which prompted defendant to stop and get off of her. He tossed Doe's clothes to her and said, "We can't tell anybody."

From Hemet, the family moved to San Jacinto where they rented a two bedroom house. Defendant and Joanna shared one bedroom while the children slept in the other. After they moved into the home, defendant frequently invited Doe to smoke marijuana with him and Joanna.

4

One night, after defendant, Joanna, and Doe smoked marijuana, Doe started to fall asleep on the couch. Defendant came out of his bedroom and tried to lie down next to her. Doe fell off the couch onto the floor. Defendant then climbed on top of Doe and put his hand over her mouth. Defendant pulled her clothes off, pulled his penis out of his shorts, and inserted his penis into her vagina. Doe felt pain, and she wondered if defendant had done the same thing to her younger siblings. After some time, defendant withdrew and ejaculated on the floor. Doe reported that she suffered painful and frequent urination after this episode, and that she had fled her home and walked two miles to stay with a friend.

Defendant had intercourse with Doe again before Thanksgiving 2010, and around Thanksgiving he grabbed her hand and forced her to touch his penis. He fondled her buttocks over her clothing, rubbed her chest, and tried to pull down her pants. Doe said, "No." However, defendant raised his voice and said, "you don't talk to me that way." Doe pushed defendant against a wall and escaped.

After that, Doe recalled defendant again beckoned her into the bedroom he shared with Joanna to join them while they smoked marijuana. While Joanna smoked marijuana, Doe and defendant were lying on the bed under the covers. Defendant put his hand under Doe's bra and rubbed her breasts and nipples. She pushed him away, but he resisted and pulled her closer.

On another occasion, Joanna walked into the bedroom when defendant was rubbing Doe's breasts and trying to put his hands down her pants. Joanna just shook her head and walked out of the room.

Doe said she tried to tell her mother what defendant was doing, but her mother only accused her of trying to take her man. Her mother then started a physical fight with her, and she later warned Doe they would have no place to live if she reported the abuse. Joanna also accused Doe of "wanting it to happen." As a result of the fight, Doe had scratches on her face and a bruised eye.

5

At various times, Doe had the opportunity to report the abuse to child protective services, but when interviewed, Doe denied anything was happening out of fear of what could happen to her if she did and because defendant allowed her to smoke marijuana and come and go as she pleased.

Finally, in February 2011, Doe and her siblings were removed from her mother's care after Joanna attempted suicide a second time. Although the children were initially placed in different foster homes, Doe was eventually placed with her biological father. She told her father about defendant's abuse. She testified the abuse was "eating [her] up," and that she had started to cut and hurt herself.

In December 2012, Doe gave a full statement to a member of the Riverside Child Assessment Team, which was played for the jury at trial. Her statement provided more detail than her testimony at the January 2013 trial, but it is also entirely consistent with what she reported in 2012.

*Defendant's Interview*

In January 2012, an investigator interviewed defendant at the Hemet sheriff's station. An audio recording of the interview was played for the jury. Defendant described Doe as "conniving, manipulative . . . she definitely likes playing people against other people." He also stated, "[Doe]'ll say whatever she has to, to uh, to get sympathy from one person and then when that doesn't work she'll try to go back to the person that she tried shitting' on in the first place." He admitted smoking marijuana with Joanna and Doe, but defendant claimed the drug helped with Doe's hyperactivity.

Defendant first denied having any sexual activity with Doe. Then he recalled a conversation in which Doe lamented the stupidity of young men and expressed her desire to be with defendant. Defendant stated he told Doe "I'm your dad. That's inappropriate." Defendant also explained that he believed Joanna's kids needed someone to watch over them.

6

After the investigator told defendant they found his DNA on Doe's body, defendant initially said, "No that's impossible." Then he admitted Doe may have kissed him on occasion, and he recounted a story where Doe had walked out of a shower, opened her towel, and walked toward him. After Doe kissed defendant on the lips, he pushed her away and told her to get dressed. However, when the investigator said they had a medical examination consistent with sexual contact and had found defendant's DNA on Doe, defendant admitted, "Yes. I made a mistake."

Defendant then reported an incident where he had been sleeping on the couch after a fight with Joanna. Doe grabbed his genitals after he went to the bathroom, and "it just kind of snowballed from there." He also told the investigator that Doe seem very "okay" with it and "fully into it." According to defendant, he had a hard time keeping Doe away from him after they moved to California. They had intercourse three or four times and "she wanted it." Defendant said the first incident occurred when they lived in the storage unit. Doe was in bed with defendant and Joanna. Doe grabbed his genitals. The second instance occurred when he and Doe were alone in the motel room. Defendant said Doe jumped on him and "one thing led to another." Defendant also admitted having oral sex with Doe.

Defendant said he never ejaculated inside of Doe for fear she would become pregnant. He also admitted knowing what he was doing with Doe was wrong, but said he also enjoyed having sex with her. At the investigator's suggestion, defendant wrote an apology letter to Doe about the "things" he did to her, and he told Doe she did not deserve "it."

*Defendant's Trial Testimony*

At trial, defendant testified he moved with Joanna and her children from New Mexico to California in April 2010. They lived in various abodes after coming to California, and defendant explained the living situations they endured after coming here. Defendant stated that he thought he had a good relationship with Doe, who he

7

characterized as "[c]lingy." Defendant said Doe was never afraid of him, but she did dress inappropriately for her age. Moreover, although defendant admitted smoking marijuana with Doe, he testified that he believed this was not the first time Doe had smoked marijuana.

Defendant testified that Doe was a willing partner in all of their sexual encounters. In essence, he admitted having sex with Doe, but denied he used force or threats to facilitate this contact. In fact, defendant claimed Doe initiated the sexual contact between them about "95 percent of the time." According to defendant, Doe usually grabbed his penis and inserted it into her vagina. Although defendant denied asking Doe to keep their sexual contacts a secret, he had told her that if someone found out he would get into trouble.

## DISCUSSION

*1. Exclusion of Evidence*

*a. Background*

During defendant's redirect testimony, his attorney tried several times to elicit testimony Doe and defendant engaged in "consensual" sexual contact. After the prosecutor objected to the use of the word consensual, and the trial court sustained the objection, defense counsel asked, "[W]hen [Doe] was laying down in the bed and coming toward you, what was your understanding about what she was interested in doing?" And, then, after the trial court sustained the prosecutor's objection on grounds of speculation, defense counsel asked, "Well, what did you think when she reached over and grabbed your penis?" Defendant responded, "She desired to have sex." When the prosecutor objected, the trial court conducted a hearing outside the presence of the jury.

After the hearing, the trial court stated, "Consent is not an issue. Whether she wanted it is not an issue. [¶] . . . [¶] Because that's planting the wrong idea in the jury's minds. You want to talk about whether force was used, now that is a different story. But she can consent all she wants. And it's still a crime. And when we go down

8

this road of did she consent, well that's trying to negate the crime in the eyes of the jurors. And that is not the law. And I'm not going to allow it."

Defense counsel argued, "[I]f someone appears to be wanting it from you, that negates force. And that is all about my case." However, the trial court disagreed and ruled, "I'm not going to let you make your statements. And I'm going to make a ruling. I'm not going to let you argue. Force is force whether she consents to it. There might be force whether she consents to it. There might be force and duress that whole litany of words, that can be there. And she's very passive. I'm just not going to let you put the idea in this jury's mind that she consented and, therefore, there's not a crime."

The prosecutor requested an admonition to the jury. The trial court told the jury there had been a disagreement between the attorneys about "a very specific legal issue that is going to be explained to you in the jury instructions . . . the jury instructions are going to tell you what is and is not an element of the crime. And just remember, that the jury instructions are what you have to follow, not what the lawyers said in here." Defendant did not object to the admonition. Thereafter, the defense rested its case.

*b. Analysis*

Defendant claims the trial court improperly excluded evidence Doe consented to the acts comprising counts 1, 2, 5, 6, 7, and 9. He also asserts the trial court's ruling infringed on his constitutional right to present a defense. Defendant explains his only defense to the charges was that he had not used force or duress to commit sex acts with Doe. Although he acknowledges consent is not a defense "to all criminal liability," he reasons evidence of Doe's consent "had the potential of changing the character of [his criminal] liability." In other words, he believes Doe's willing participation in the crimes should negate any finding of force, violence, duress, menace or fear of bodily injury. We disagree.

First, the trial court correctly excluded defendant's use of the word consent. The victim's actual consent is not a defense to charges of forcible sexual contact with a

9

child. (*People v. Soto* (2011) 51 Cal.4th 229, 232) Thus, defendant's testimony he believed Doe consented was not relevant to these charges. (Evid. Code, § 210 ["'Relevant evidence'" means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action].) Consequently, there was no abuse of the trial court's broad discretion to determine the relevance and admissibility of evidence. (*People v. Benavides* (2005) 35 Cal.4th 69, 90; *In re M.L.* (2012) 205 Cal.App.4th 210, 228.)

Moreover, excluding this evidence did not preclude defendant from trying to negate the elements of force or duress by asserting the acts occurred without the use of force or duress. In fact, defendant testified Doe was not afraid of him, frequently came to him, dressed inappropriately around him, wanted him to lie down with her so she could grab his genitals, and that Doe actually inserted his penis into her vagina. He also testified Doe initiated sexual contact between them about "95 percent of the time." And, he repeatedly denied holding Doe down, threatening her, or telling her to keep quiet, and declared the sex between them was mutual. In fact, during his direct examination, and before the prosecutor objected, defendant actually testified that the sex acts with Doe were "consensual" "every time." Thus, the trial court's ruling did not prevent defendant from presenting his defense to the charges, namely that he did not use force or duress to commit digital penetration, rape, or lewd conduct.

As to defendant's constitutional claim, "'[a]s a general matter, the "[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense." [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. [Citation.] If the trial court misstepped, "[t]he trial court's ruling was an error of law merely; there was no refusal to allow [defendant] to present a defense, but

10

only a rejection of some evidence concerning the defense." [Citation.]'" (*People v. Boyette* (2002) 29 Cal.4th 381, 427-428.) We have concluded the trial court's ruling was correct and did not impinge on defendant's right to present his defense. Thus, defendant's constitutional claim is meritless.

2. *Sufficiency of the Evidence*

Defendant also challenges the sufficiency of the evidence to prove he used force or duress to commit forcible sexual penetration (count 1), forcible lewd conduct with a child (counts 2 & 5), and forcible rape (counts 6,7, 9).

*a. Standard of Review*

When presented with a claim of insufficient evidence, the appellate court reviews the entire record in the light most favorable to the verdict and determines whether there is substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable juror could find the defendant guilty beyond a reasonable doubt. (*People v. Osband* (1996) 13 Cal.4th 622, 690; *People v. Davis* (1995) 10 Cal.4th 463, 509.)

An appellate court does not reevaluate witness credibility or resolve conflicts in the evidence (*People v. Young* (2005) 34 Cal.4th 1149, 1181), and we must accept logical inferences the jury might have drawn from any circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) The testimony of a single witness, if believed, is sufficient to establish any fact. (Evid. Code, § 411; *People v. Jones* (2013) 57 Cal.4th 899, 963.)

While it is the jury's duty to acquit where circumstantial evidence is subject to two reasonable interpretations, one which points to guilt and one which points to innocence (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054), where circumstances reasonably justify a jury's findings of fact, a reviewing court's conclusion that such circumstances might also reasonably be reconciled with contrary findings does not justify reversal. (*Id.* at p. 1054.)

11

*b. Analysis*

Counts 2 and 5 alleged defendant committed lewd conduct with a child "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ." (§ 288, subd. (b)(1).) The prosecutor argued counts 2 and 5 were based on defendant's fondling of Doe's breasts while they were in the storage facility, and the fondling incident that occurred in the San Jacinto home that Joanna interrupted and ignored.

For counts 2 and 5, the trial court instructed, in pertinent part, "The force used must be substantially different from or substantially greater than the force needed to accomplish the act itself. [¶] Duress means the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do or submit to. When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the child and her relationship to the defendant."

According to the prosecutor, the crime alleged in count 2 occurred in the storage unit when defendant came up behind Doe and touched her breasts over her clothes as she bent over to get a soda out of a cooler. Doe testified that she flinched and moved away from him. The acts comprising count 5 occurred after the family moved to San Jacinto. As Doe explained it, defendant was wearing shorts without underwear and he grabbed Doe's hand and forced her to touch his penis. He then fondled her buttocks over her clothing, rubbed her chest, and tried to pull down her pants. Doe said, "No." However, defendant raised his voice and said, "you don't talk to me that way." Doe pushed defendant against a wall.

The prosecutor did not argue defendant used force to commit these crimes, but relied on evidence of duress. Both incidents occurred after defendant's first act of digital penetration. A reasonable inference is that Doe considered the same possible negative consequences she had considered before. She needed a parent, and defendant seemed to be the only adult providing shelter and emotional support. It is objectively

12

reasonable that Doe's fear her only known source of stability and sustenance would disappear kept her from speaking out or resisting.

"""Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.'" (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-1320; see also *People v. Veale* (2008) 160 Cal.App.4th 40, 46 [total circumstances, including age of victim and the victim's relationship to the defendant, are factors to be considered in appraising existence of duress].) Furthermore, the disparity in physical size between a petite 12-year-old girl and a large, over 30 male adult also contributes to a youngster's sense of her "relative physical vulnerability." (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 51.) Under the circumstances, a rational trier of fact could have found defendant used duress where, as here, there was an "inherent imbalance of power in an encounter between a child and an adult bent on sexual conduct." (*People v. Soto*, *supra*, 51 Cal.4th at pp. 245-246.) Consequently, we find sufficient evidence supports the jury's verdict on counts 2 and 5.

Counts 6, 7, and 9, alleged aggravated sexual assault on a child by means of forcible rape, which requires an act of "[r]ape, in violation of paragraph (2) or (6) of subdivision (a) of Section 261." (§ 269, subd. (a)(1).) The prosecution relied on subdivision (2) of section 261, which provides for enhanced punishment where the rape "is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

The trial court instructed the jury, pursuant to CALRIM No. 1000, that "[i]ntercourse is accomplished by force if a person uses enough physical force to overcome the female's will. [¶] Duress means a direct or implied threat of force, violence, danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise. When deciding whether the act

13

was accomplished by duress, consider all the circumstances, including the female's age and her relationship to the defendant."

The prosecutor relied on the following incidents to prove these counts; (1) the incident that took place in the hotel room in Hemet where defendant threw Doe on the bed, grabbed her jeans and pulled them down, spread her legs, and forcibly inserted his penis in her vagina (count 6); (2) the incident in the San Jacinto home where defendant encouraged Doe to smoke marijuana and then pinned her arm down, covered her mouth, pulled her pants down, put his penis inside her vagina, and then ejaculated on the floor (count 7); and, (3) another incident in the San Jacinto home where defendant grabbed Doe, put her on the floor, placed his hand over her mouth, pushed her stomach down when Doe arched her back, and inserted his penis insider her vagina while Doe urinated uncontrollably (count 9).

We first note that even though section 288, subdivision (b)(1) and subdivision (2) of section 261 use identical language, the definition of "force" for purposes of a forcible lewd act on a child is different than for purposes of forcible rape. (See *People v. Griffin* (2004) 33 Cal.4th 1015, 1028 [rape].) For purposes of a forcible lewd act on a child, the force must be "'substantially different from or substantially greater than that necessary to accomplish the [sexual] act itself.' [Citation.]" (*People v. Soto*, *supra*, 51 Cal.4th at p. 242; *People v. Babcock* (1993) 14 Cal.App.4th 383, 386, [defendant grabbed the victims' hands and forced them to touch his genitals].) For purposes of rape, it is sufficient to show "act of sexual intercourse was against the will of the [victim]." (*People v. Griffin*, *supra*, 33 Cal.4th at pp. 1023-1024.)

Based on Doe's testimony, the rapes were most definitely against her will. For count 6, the evidence was that defendant threw Doe onto a bed, pushed her pants and underwear to her ankles, forced her legs apart and inserted his penis in her vagina while holding her down by the shoulders. For count 7, Doe testified defendant forced her to the floor, covered her mouth, pinned her down, pulled her pajama pants off one leg, and

14

inserted his penis in her vagina.  And, in count 9, defendant again forced Doe to the floor, covered her mouth with one hand and used the other to hold her down, pulled her pants off and inserted his penis into her vagina.  This time, Doe did attempt to resist by arching her back, but to no avail.  Plus, the facts discussed above also establish defendant's use of duress to repeatedly victimize Doe and keep her quiet.  Thus, the evidence is sufficient to support counts 6, 7, and 9.

With respect to count 1, the amended information charged defendant with aggravated sexual assault on a child by sexual penetration in violation of subdivision (a) of section 289.  Former section 289, subdivision (a)(1) penalized "[a]ny person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ."

The conduct underlying count 1 was the digital penetration of Doe's vagina while Doe and defendant were in the storage facility.  The trial court instructed the jury, "An act is accomplished by force [i]f a person uses enough physical force to overcome the other person's will[,]" and "[d]uress means a direct or implied threat of force, violence, danger, hardship, or retribution that is enough to cause a reasonable person of ordinary sensitivity to do or submit to something that he or she would [n]ot otherwise do or submit to."  The prosecutor argued the force element was accomplished when, as Doe testified, she tried to push defendant away, but he told her to "Just be quiet."

Doe reported that this incident caused her pain and bleeding, which is circumstantial evidence of force beyond that normally required to perform digital penetration.  In addition, after the crime was completed, defendant told Doe not to tell anyone what had occurred because he could go to jail, which Doe understood to mean would result in the loss of a place to live for her and her family.  In light of Doe's youth, the vast size difference between the two, the fact that defendant had assumed a parental role of provider and protector, this implied threat of hardship was sufficient to prove

15

duress.  (See *People v. Veale* (2008) 160 Cal.App.4th 40, 47.)  As Doe testified, she was afraid to tell anyone about defendant's activities because he and her mother repeatedly reminded her of what would happen if defendant was arrested.  We conclude there is sufficient evidence of both duress and force to sustain the guilty verdict on count 1.

*3. Simple Battery is Not a Lesser Included Offense of Lewd Conduct With a Child*

Defendant claims the trial court had a sua sponte duty to instruct the jury on simple battery as a lesser included offense of lewd conduct with a child.  At the time defendant filed his opening brief, the appellate courts were divided on the question of whether, as a matter of law, one cannot commit a lewd act upon a child without also committing a simple battery.  (*People v. Santos* (1990) 222 Cal.App.3d 723, 739.)

However, after the filing of defendant's opening brief, the California Supreme Court decided *People v. Shockley* (2013) 58 Cal.4th 400, 406.  There, the California Supreme Court resolved the conflict among the appellate courts and stated unequivocally that simple battery is not a lesser included offense of lewd acts upon a child as defined in section 288, subdivision (a).  We are bound to follow the decisions of the Supreme Court.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Accordingly, the decision in *Shockley*, *supra*, 58 Cal.4th at page 406 requires us to reject defendant's claim the trial court had a sua sponte duty to give simple battery as a lesser included offense of lewd conduct with a child.

## DISPOSITION

The judgment is affirmed.


                                    THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

17