Filed 12/23/24  P. v. Paz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084308 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF2102115) |
| HILARIO MENDOZA PAZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Mark E. Johnson, Judge.  Affirmed in part; reversed in part with directions.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Collette C. Cavalier, Kathryn Kirschbaum and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Hilario Mendoza Paz of attempting to contact a minor with intent to commit a lewd act with a minor under age 14 (Pen. Code,[1] § 288.3, subd. (a); count 1); attempting to commit a lewd and lascivious act with a minor under age 14 (§§ 664/ 288, subd. (a); count 2); arranging and going to meet a minor with intent to engage in lewd and lascivious behavior (§ 288.4, subd. (b); count 3) and arranging to meet a minor with intent to engage in lewd and lascivious behavior (§ 288.4, subd. (a)(2); count 4). In a bifurcated proceeding, it found true enhancement allegations that Paz was previously convicted of violating section 288, subdivision (a) (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)), which was a serious felony (§§ 667, subd. (a), 288.3, subd. (a)). It also found true aggravating factors that Paz has served a prior prison or jail term (§ 1170, subd. (h); California Rules of Court, rule 4.421(b)(3)), and has prior convictions as an adult that are numerous and/or of increasing seriousness within the meaning of California Rules of Court, rule 4.421(b)(2).

The court sentenced Paz to an aggregate term of 18 years consisting on count 1 of a four-year upper term doubled to eight years due to the prior strike offense plus consecutive five-year terms for the two enhancements (§§ 288.3, subd. (a), 667, subd. (a).) It stayed the sentence on the remaining counts under section 654.

Paz contends: (1) Insufficient evidence supported the count 1 conviction because the jury instructions required proof of an actual minor victim; (2) insufficient evidence supported the count 2 conviction because he did not advance beyond mere planning of the offense, and the victim was not in fact a minor; (3) the court improperly admitted evidence of his prior sex offense convictions under Evidence Code section 1108; and (4) the count 4

---

[1] Undesignated statutory references are to the Penal Code.

2

conviction must be reversed because it is a lesser included offense of count 3. The People concede and we agree the last contention has merit. We therefore affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Case*

An investigator with the Riverside County Child Exploitation Team, which investigates Internet-based crimes involving children, testified that in February 2021, during an undercover operation, she created an online profile and posed as children on various websites to locate adults who are seeking to engage in sexual intercourse with minors. She used the profile name "Lindsay," and an authorized picture of a then-13-year-old girl. Paz, using his actual photograph and the user name "Jesus," contacted Lindsay via chat. He gave her his phone number for her to send him text messages, and they communicated during the next three months.

Lindsay told Paz she was 13 years old, and sent him a picture of a girl who was that age. Paz stated he was 31 years old. In order to reinforce the point that she was a child, Lindsay told him she was still in school. For that same reason, she also told him she never had a boyfriend. He told her, "I'm your first boyfriend." Paz asked whether she had ever had sex before and she said, "No. I haven't." He repeatedly addressed Lindsay as "Bebe." Lindsay sent him a picture of a young-looking girl, and he asked whether she was "down to spend the night with [him]" at a hotel or at her house.

Paz asked Lindsay whether she was ready for sex. She reiterated she had not had sex before. He asked her to send him a picture from school. She sent him a picture of a notebook, blanket, and pen. He then asked for her home address. Lindsay sent him an address in Riverside. She asked what Paz wanted from her, and he replied: "You good [*sic*] relationship, no games,

3

sex, love and fun.  You're a good girl, and I need you with me.  You don't want me 'cause you're scared."  Paz told Lindsay that he had fallen in love with her, did not care about other girls, and did not want her to hurt him.  He accused her of "playing games with him" and talking to other men online.

Paz and Lindsay began discussing meeting in person.  Lindsay offered to skip school, but he told her not to because it could cause problems.  He asked for her address again.  She sent him the same address.  He asked her where her mother would be, and Lindsay said at another house.  Lindsay eventually suggested that he meet her at a fast food restaurant.  He agreed and told her the color and model of his vehicle.  Afterwards, Paz told Lindsay, "Look, I'm gonna eat your pussy and kiss your titis [*sic*]."  He asked Lindsay how big her breasts were.  She repeated that she was 13 years old.  She testified that her rationale for doing so was "to give [him] that opportunity to, you know, maybe back out of it and just a constant reminder to him who he's talking to, and that he's talking to a child."

Lindsay asked Paz, "You're still okay with my age?  I just want to be sure."  Paz replied that he loved her, and again asked about her breast size.  She replied that they are "medium."  Paz asked about "[her] pussy, ass," and she replied, "It's good."  Paz asked, "Do you want me to suck it?"  He asked her to send him a picture of her breasts.  Lindsay said that she wanted to wait until they met in person, but Paz persisted, "Let me see how much you love me."  Lindsay sent a picture of a woman's chest area covered by a shirt.  He also asked whether she was okay with his age.

One day, Paz told Lindsay they could meet after he finished working in Victorville that evening, and asked her for a map of the restaurant in Riverside where they would meet.  Lindsay sent it to him, and they agreed on a time.  Lindsay asked him to text her when he arrived.  The investigator and

4

her team went to the restaurant. At around the scheduled time, Paz arrived in the vehicle he had described and texted, "I'm here." The investigator apprehended him.

*A Parallel Undercover Investigation Involving Paz*

A second Riverside County Child Exploitation Task Force investigator testified that in May 2021, he created a different profile on the same dating website, using the name "Destiny," and a profile picture of an approximately 13-year-old girl. Paz contacted Destiny using the same "Jesus" profile he used to contact Lindsay. Paz gave her his cellular phone number for her to text him.

Paz asked Destiny her age. She said she was almost 14 years old. He said she looked pretty and sexy. Paz asked her for a picture of herself, and she sent a computer-generated image of a young teenage girl. He told her, "Age don't matter." Paz asked whether Destiny was a virgin, and she answered in the affirmative. He replied, "Let's have fun," saying he was available "24/7" to meet her. He proposed they meet, drink, smoke, or have sex, and said "he wanted to kiss and suck [her] pussy good."

Paz repeatedly called Destiny "Bebe" as well. He told her, "I want you straight up. No games." He last communicated with her on the day he was scheduled to meet Lindsay, telling Destiny he "ha[d] a girl from Riverside" who he loved, and sending her a picture he received from Lindsay, who he called his "girlfriend."

Law enforcement officers found two cellular phones and Paz's identifying documents, including his driver's license, in his car. He was 45 years old. Investigators confirmed that Paz's cellular phone number was the same one he had given to both Destiny and Lindsay. The dating site's application was installed on Paz's phone. Destiny's and Lindsay's contact

5

information were stored on Paz's phone.  An application showed that Paz had recently searched for the addresses that Lindsay and Destiny gave him.

*Evidence Code Section 1108 Testimony*

The parties stipulated Paz had suffered prior sex convictions.  Over Paz's objection, Jane Doe (M.M.) testified that in 2013, when she was 13 years old and had a profile on the same dating application, Paz contacted her, saying he was interested in sex.  He arrived in a van, where they had sex.  Police officers arrived at the scene and found them both naked.

Jane Doe (J.R.) testified that in March 2008, when she was a 14-year-old high school student, she met Paz through a telephone chat line.  They met and had sex on three separate occasions.

*Defense Case*

Paz testified that he owned one of the cellular phones found in his vehicle; however, the other one belonged to his former coworker named "Luis."  On the day Paz was apprehended, Luis had showed up at Paz's work and asked him for a ride.  Luis asked him to pick up a person from the restaurant.  Luis gave Paz his cellular phone, showed him where to go on the GPS, and typed a message on his phone that said, "I'm here," but did not send the text message.  Louis instructed Paz to hit the "send" button on the message when he arrived at the restaurant.  Paz complied, and was about to get something to eat when police surrounded him.

Paz testified he never used his cellular phone to access any dating websites or applications.  He never used Luis's cellular phone except to send the "I'm here" text message.  Paz acknowledged that his picture was on Luis's phone as the profile picture in the dating application, but testified he did not put his photograph into Luis's phone.  He denied sending any of the text

6

messages to the investigators. He acknowledged knowing the passcode required to unlock both cellular phones.

On cross-examination, the prosecutor asked Paz about his relationships with the two Jane Does:

"[Prosecutor:] Sir, are you sexually attracted to minor females?

"[Paz:] I just had two relationships with two—with people, that's all, the ones that came here [to testify]. That's the reality. I got nine years in prison for that reason, and I paid for that already.

"[Prosecutor:] So is your answer, yes, you were sexually attracted to minor females?

"[Paz:] No. It was a normal relationship.

"[Prosecutor:] Did you enjoy having sex with them?

"[Paz:] We were a couple.

"[Prosecutor:] So is that a yes?

"[Paz:] Yes. Well, yes."

*Rebuttal Testimony*

On rebuttal, the investigating officer who portrayed Lindsay testified that when she detained and interviewed Paz, he confirmed he understood English. After the investigator advised him of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, Paz admitted that both cellular phones were his, but his parole agent only knew about one. He admitted he had communicated with Lindsay but claimed he was just "messing around" and did not plan to actually meet her. He said he did tell Destiny he wanted to have sex with her, but he backed out of it. The investigator testified Paz never mentioned anyone named Luis during the interview, and she did not hear about him until Paz testified at trial. An audio recording of the interview was admitted into evidence and played for the jury.

7

## I. *Sufficiency of Evidence Supporting the Count 1 Conviction*

Paz contends the trial evidence is insufficient to support his section 288.3 subdivision (a) conviction for communicating or attempting to communicate with a minor with intent to commit a sexual offense. He concedes that under this court's ruling in *People v. Korwin* (2019) 36 Cal.App.5th 682, a defendant can "theoretically be convicted under the attempt prong of the statute without evidence of a minor victim." He nevertheless claims "the instruction given in this case required that the targeted victim was in fact a minor."

"When an appellant challenges the sufficiency of the evidence to support a conviction, the appellate court reviews the entire record to see ' "whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." ' " (*People v. Cochran* (2002) 103 Cal.App.4th 8, 12-13, disapproved on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.) "We view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support." (*Cochran,* at p. 13.) "The test on appeal is not whether we believe the evidence established the defendant's guilt beyond a reasonable doubt, but whether ' " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " ' " (*Ibid.*)

Section 288.3, subdivision (a) provides that it is a felony to "contact or communicate" with a minor, or "attempt[ ] to contact or communicate" with a minor if the defendant "knows or reasonably should know that the person is a minor" with intent to commit a specified sex offense. (§ 288.3.)

*People v. Korwin, supra,* 36 Cal.App.5th 682 controls this issue.  There as here, the defendant contended "there was insufficient evidence for his conviction under section 288.3, subdivision (a), because he did not communicate with an actual minor." (*Id.* at p. 687.)  In rejecting that contention, we held that "the knowledge element makes the crime punishable if the defendant making the contact or attempting to make the contact either 'knows *or reasonably should know* that the person is a minor.'  ([§ 288.3, subd. (a)], [i]talics added.)  As written, the knowledge requirement of the statute focuses on the knowledge and intent of the offender by ensuring the offense does not impose strict liability upon someone who does not know or has no reason to know the person with whom he or she is communicating or attempting to communicate is a minor.  It does not actually require a minor victim." (*Korwin,* at p. 688.)

Here, sufficient evidence supports the jury's finding Paz believed he was talking to a minor.  The investigator portraying Lindsay repeatedly told him she was 13 years old and her profile picture was of a girl that age.  Lindsay told him she was in school, and he requested and received her photos reflecting that.  He addressed her as "Bebe" (which in Spanish means "baby"), asked about her breasts and genitals, and told her exactly and explicitly the sexual acts he intended to do to her.  When Lindsay asked Paz if he was okay with her age, he did not say no, but rather said he loved her.  When she asked him what he wanted from her, he admitted he wanted sex from her.  He also said he would be her first boyfriend.  Although Paz was also chatting about lewd topics with Destiny, he cut off that communication in order to pursue the one with Lindsay.  He claimed he loved her, and forwarded her picture to Destiny.

Paz argues that under the court's instruction with CALCRIM No. 1124[2] the victim was required to be an actual minor: "[T]he prosecutor was required to prove that [he] contacted or attempted to contact 'a minor' and that he had the intent to commit the specific sex offense against 'that minor.' " He adds with no citation to authority that "[i]f the prosecution had intended to rely on [*People v. Korwin, supra,* 36 Cal.App.5th 682] to establish attempt liability, the instructions describing each element of the offense should have specified that it was sufficient to establish only that [he] communicated with a person he believed to be a minor. However, elements 1 and 2, as given, clearly require that [he] committed the offense against a bona fide minor victim."

The court used the standard Judicial Council form jury instruction; therefore, if Paz wanted a pinpoint instruction, it was his responsibility, not the prosecution's, to request one. " ' "[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' [Citation.] Because defendant did not object at trial that the instructions were incomplete as given, the issue is forfeited." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 901.)

When addressing challenges to jury instructions, our review is independent. (E.g., *People v. Thomas* (2023) 14 Cal.5th 327.) We determine the correctness of jury instructions from the entire charge of the court, not

---

2    The court instructed the jury with CALCRIM No. 1124 regarding the elements of the crime: "1. The defendant contacted or communicated with or attempted to contact or communicate with a minor; [¶] 2. When the defendant did so, he intended to commit the crime of lewd or a lascivious act [against] a child under 14, involving that minor; AND [¶] 3. The defendant knew or reasonably should have known that the person was a minor or the defendant believed that the person was a minor."

10

from isolated parts of an instruction. (*People v. Carrington* (2009) 47 Cal.4th 145, 192.) CALCRIM No. 1124 tracks the statutory language and is stated in the conjunctive. The third element, that the defendant knew or reasonably should have known that the person contacted was a minor, is always a requirement. Yet under Paz's interpretation, the minor referred to in parts 1 and 2 of the instruction must be an actual minor, while the same minor referred to in part 3 of the instruction is allowed to be a fictional minor. We conclude the Legislature could not have intended the same word in the statute to have such inconsistent meanings, and no reasonable juror would have interpreted the instruction to require a real minor victim.

Finally, Paz's cramped interpretation of the jury instruction does not advance the purpose of section 288.3, which is to support "law enforcement officers who use undercover measures to identify, deter, and punish Internet predators who attempt to sexually victimize children before they reach minor victims." (*People v. Korwin, supra,* 36 Cal.App.5th at p. 690.) "We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation." (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

## II. *Sufficiency of the Evidence Regarding Count 2*

Paz contends insufficient evidence supports his section 288, subdivision (a) conviction for attempted lewd and lascivious act on a child under age 14, as he did not progress beyond mere planning and preparation. He also argues the victim described in the information was not a minor: "In this case, assuming and not conceding that [Paz] was the person who sent the text messages, the evidence demonstrates that [his] communications were equivocal and did not advance beyond mere planning and preparation. First, during the lengthy text exchanges, although [he] made many suggestions

11

that he and the police decoy engage in sexual activity, [he] also repeatedly indicated that if he were to meet with one of the decoys, they would do whatever she wanted to do." He further contends his text messages with Lindsay were ambivalent.

Paz concedes that under this court's holding in *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 187 (*Hatch*), "[a] defendant can commit the crime of attempted lewd acts with a minor even if there is no minor victim, so long as the prosecutor proves that at the time of the charged acts, the defendant believed that the targeted person was a minor." But he contends without any meaningful analysis: "To obtain a conviction under the theory approved in *Hatch*, the prosecutor should have requested an instruction stating that [he] could be convicted if he committed the requisite acts against a person *he believed to be* a child under the age of 14. However, the prosecutor did not request such an instruction." He adds that under the instruction given, "the prosecutor was required to prove that [he] attempted to molest an identified person who was actually under the age of 14. Because there was plainly no such evidence offered at [his] trial, there was constitutionally insufficient evidence to support [his] conviction[.]"

Section 288, subdivision (a) provides in part: "[A] person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." "A defendant is guilty of an attempt if the evidence shows he had the specific intent to commit the substantive offense and under the circumstances as he believed them to be took actions to consummate the substantive offense, even though

circumstances unknown to him made completion of the substantive offense impossible." (*Hatch, supra,* 80 Cal.App.4th at p. 187.)

The court instructed the jury with CALCRIM No. 460 that the prosecutor was required to prove: "1. The defendant took a direct but ineffective step toward committing lewd or lascivious acts against a child under the age of 14; and [¶] 2. The defendant intended to commit the crime of lewd or lascivious acts against a child under the age of 14. [¶] A direct step requires more than merely planning or preparing to commit lewd or lascivious act[s] with a child under 14 years or obtaining or arranging for something needed to commit lewd or lascivious act[s] with a child under 14 years. [¶] A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. [¶] A direct step includes—or indicates a definite and unambiguous intent to commit lewd or lascivious act[s]with a child under 14 years. It is a direct movement towards the commission of the crime after preparations are made. It's an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt."

In *Hatch, supra,* 80 Cal.App.4th 170, the defendant argued the information must be dismissed because the prosecution could not establish an essential element of the offenses charged under section 288, subdivision (a), namely that the victim was under age 14. (*Hatch,* at p. 185.) This court rejected that argument, pointing out the defendant was charged with *attempting* to violate the statute: "The fact the prosecution cannot show that [the defendant's] intended victims were in fact under 14 years of age is irrelevant to his culpability for attempting the charged crimes. If [he] had the specific intent to complete the target crimes, the impossibility of

13

completing the crimes does not exonerate him from attempting those offenses." (*Id.* at pp.185-186.)

The same analysis applies here. The jury witnessed Paz testifying, and it could reasonably disbelieve him and conclude his conduct amounted to more than mere planning. As stated, we do not reweigh the jury's findings and credibility determinations on appeal. If Paz had merely chatted with the inspector posing as a minor and proposed lewd conduct at some indefinite time and place, it would have been possible to construe his conduct as that of an "obscene phone texter" who derives all the gratification he seeks from the chat itself and who therefore contemplates no physical encounter with the victim. But he followed up his chat propositions by deliberately driving to meet his victim in person from Victorville to Riverside, and he followed Lindsay's instruction to text her upon his arrival. A rational person could easily conclude beyond a reasonable doubt that "a crime [was] about to be consummated absent an intervening force." (*People v. Dillon* (1983) 34 Cal.3d 441, 455.) The intervening force in this instance was Paz's apprehension. The evidence supports a finding that an attempt was underway, and that but for the investigator apprehending him, a violation of section 288 would have ensued.

Paz relies on *People v. La Fontaine* (1978) 79 Cal.App.3d 176 for his contention that his communications did not advance beyond mere preparation. In that case, the defendant picked up a hitchhiker, and asked the hitchhiker if he wanted to make five or ten dollars by allowing the defendant to perform oral sex on him. (*La Fontaine,* at p. 179.) "At no time did [the] defendant touch any portion of [the hitchhiker's] body or make any movement or motion toward [the hitchhiker's] body." (*Id.* at p. 180.) The court held that this solicitation to commit a lewd act, without more, was

14

insufficient to constitute an attempt to commit a lewd act in violation of section 288. (*Id.* at pp. 182-183.) This court in *Hatch, supra,* 80 Cal.App.4th at p. 188 and other courts have declined to follow *La Fontaine* on this point. (See, e.g., *People v. Herman* (2002) 97 Cal.App.4th 1369, 1386 ["That an invitation to participate in the defendant's commission of a crime consists only of words does not mean it cannot constitute an 'act' toward the completion of the crime, particularly where the offense by its nature consists of or requires the requested type of participation"]; *People v. Ansaldo* (1998) 60 Cal.App.4th 1190, 1196.) Moreover, the question here is academic. As stated, Paz did more than engage in his lewd sexual chat.

      III. *Prior Offense Testimony Under Evidence Code Section 1108*

Paz contends the court prejudicially erred and violated his constitutional due process rights by admitting testimony of his prior sex offenses: "Although Evidence Code section 1108 permits trial courts to admit evidence of prior sex crimes to prove attempted child molestation under section 288[, subdivision] (a) and that is the crime charged in count 2, the admission of the evidence to prove counts 1, 3 and 4 was plainly unauthorized by [Evidence Code] section 1108." (Some capitalization omitted.) He also contends that under Evidence Code section 352, the prejudicial effect of this testimony outweighed its probative value.

In motions in limine, Paz objected to the introduction of the prior crime testimony, arguing the incidents were stale as they occurred in 2008 and 2013. Defense counsel further argued: "[T]he whole idea behind [Evidence Code section] 1108 evidence is to show a propensity or a character flaw or characteristic of the defendant that relates to the case at hand. Propensity is almost irrelevant in this case, I would say, and the reason why is because the whole defense is going to be centered around whether or not [ ] Paz is the one

15

that sent these text messages.  I expect [ ] Paz to testify.  I expect him to explain that it was somebody else that was using his phone."  He also argued the probative value of that testimony was outweighed by its prejudicial nature.

The court recognized the prior crimes were "a little dated," but concluded they "are so amazingly probative, [Paz] is with a 15-year old and a 13-year old in both of the cases.  The whole point is showing propensity.  . . . I mean, this is spot on.  It shows a sexual attraction to girls who are barely out of puberty."  In evaluating the testimony under Evidence Code section 352, it ruled, "[T]here's plenty of prejudicial impact, but a huge amount of probative value, especially when I don't think the identity issues really help the defense that much on this argument.  I feel like we are trying to figure out who did it.  Did somebody take his phone or more likely him who did it [*sic*]?  And lo and behold he has this prior behavior that shows the propensity."

In general, evidence of a defendant's uncharged conduct is not admissible to prove that the defendant has a criminal disposition or propensity.  (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.)  But Evidence Code section 1108 provides that when a defendant is charged with a sexual offense, evidence of the defendant's other sexual offenses is not made inadmissible by Evidence Code section 1101 if the evidence is not inadmissible under Evidence Code section 352.

The Legislature, in enacting Evidence Code section 1108, recognized that "sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence.  The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations."  (*People v. Villatoro* (2012) 54

16

Cal.4th 1152, 1160; *People v. Falsetta* (1999) 21 Cal.4th 903, 911.) Evidence Code section 1108 allows the trier of fact to consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility and in deciding whether the defendant committed the charged sexual offense. (*Villatoro,* at pp. 1160, 1164, 1166-1167; *Falsetta,* at pp. 911-912, 922.)

Further, uncharged sexual conduct evidence is admissible if the probative value of the evidence is not substantially outweighed by the probability its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or misleading the jury. (Evid. Code, §§ 352, 1108, subd. (a).)

The California Supreme Court has provided guidance on the admissibility of prior sexual offenses: "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta, supra,* 21 Cal.4th at p. 917.)

We review the trial court's Evidence Code section 352 determination under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515.) We will not reverse unless the trial court exercised its

17

discretion in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004.)

We conclude that under Evidence Code section 352, the court did not abuse its discretion in evaluating the prior acts and finding them probative because Paz's past actions bore significant similarity with his conduct in this case regarding where he met his victims and his manner of engaging with other young victims. His past conduct supported an inference he had a propensity to commit sex offenses, including the charged crimes. Thus it had substantial probative value. Further, the evidence did not consume too much time, create substantial danger of undue prejudice, or confuse the issues for the jury. Additionally, the court instructed the jury with CALCRIM No 119A that the uncharged offenses alone did not constitute sufficient proof defendant was guilty of the charged offenses. The instruction informed the jury it had to find Paz guilty of the charged offenses beyond a reasonable doubt.[3] The prejudice referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.

_____

[3] The court instructed the jury with CALCRIM No. 1191A that it was allowed to consider the prior crime evidence "only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses." It added: "If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the offenses charged in counts 1, 2, 3, and 4. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. . . . It's not sufficient by itself to prove that the defendant is guilty of counts 1, 2, 3 and 4."

Under this statute, prejudicial is not synonymous with damaging. (*People v. Doolin* (2009) 45 Cal.4th 390, 439.)

Paz contends, for the first time on appeal, that the court should have limited the prior crime evidence for the jury's use as to the count 2 charge under section 288 because the other charged offenses (sections 288.3 and 288.4) are not enumerated in Evidence Code section 1108.[4] In the trial court, Paz only challenged the admission of the prior crimes testimony on grounds of staleness, a lack of propensity and prejudice. A "[d]efendant may not challenge on appeal the admission of evidence on grounds not urged in the trial court." (*People v. Price* (1991) 1 Cal. 4th 324, 430.) We therefore conclude this claim is forfeited.

IV. *Count 4 Must Be Stricken as a Lesser Included Offense of Count 3*

The People concede and we agree Paz's count 4 conviction under section 288.4, subdivision (a)(2) for arranging a meeting with a minor with intent to commit a sexual offense must be dismissed because it is a lesser included offense of count 3, the section 288.4, subdivision (b) offense of arranging and going to meet a minor with intent to commit a sexual offense. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. (*People v. Reed* (2006) 38 Cal. 4th 1224, 1227; accord, *People v. Ramirez* (2019) 43 Cal.App.5th 538, 548 ["We hold that a violation of section 288.4, subdivision (a) is a lesser included offense of section 288.4, subdivision

---

4    Evidence Code section 1108, subdivision (d)(1) provides: " 'Sexual offense' means a crime under the law of a state or of the United States that involved any of the following: [¶] (A) Any conduct proscribed by subdivision (b) or (c) of Section 236.1, Section 243.4, 261, 261.5, 262, 264.1, 266c, 269, 286, 287, 288, 288.2, 288.5, or 289, or subdivision (b), (c), or (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11, 314, or 647.6 of, or former Section 288a of, the Penal Code."

19

(b)"].)  Accordingly, Paz's section 288.4, subdivision (a)(2) conviction must be stricken.

## DISPOSITION

The superior court is directed to strike Paz's count 4 conviction under section 288.4 subdivision (a)(2).  In all other respects, the judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.

20