Filed 2/18/26  P. v. Herediasantana CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064391 |
| v. | (Super. Ct. No. 22CF0957) |
| ALEJANDRO HEREDIASANTANA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gassia Apkarian, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Kathryn Kirschbaum, and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Alejandro Herediasantana of various sex crimes against underage girls and of violating a restraining order. He asserts the judgment must be reversed because the trial court erroneously disallowed two defense peremptory challenges, it improperly limited evidence of other perpetrators' sexual abuse of one of his victims, and there was insufficient evidence he knew about the terms of the protective order. We reject these arguments and affirm the judgment.

FACTS

In the early 2000s, Herediasantana began dating a woman who lived in a rented room in Santa Ana with her children. He often stayed with them over the weekend, sharing the single bed. When the woman's 10-year-old daughter, B., moved from Mexico to join her family in Santa Ana, Herediasantana began to rape and molest the child. The abuse continued over the next six years until B. moved out of state to escape him.

Years later, while dating another woman, Herediasantana (then in his late 40s) began having sex with her 15-year-old daughter, Y. After learning about their relationship, Y.'s mother obtained a restraining order against Herediasantana, but he continued his relationship with Y., who eventually got pregnant. She gave birth to his child when she was 17.

Herediasantana was charged with continuous sexual abuse of a minor under the age of 14 (Pen. Code, § 288.5, subd. (a)), unlawful sexual intercourse with a minor (*id.*, § 261.5, subd. (c)), and two counts of violating a protective order (*id.*, § 273.6, subd. (a)), among other allegations.

The prosecution filed a motion in limine under California's rape shield law (Evid. Code, §§ 782, 1103) to exclude evidence that B. had been sexually assaulted by two other men. In opposition, defense counsel maintained the evidence was necessary to impeach B.'s credibility, as B. had

2

reported those other sexual assaults to authorities as a teenager but had not reported Herediasantana for similar conduct. The trial court preliminarily ordered that defense counsel could use B.'s lack of reporting for impeachment purposes only.

During voir dire, defense counsel attempted to exercise peremptory challenges as to Juror No. 126, a retired Army officer, and Juror No. 159, who had initially suggested Herediasantana was likely guilty if he had been arrested and charged. The trial court said those were insufficient grounds for a peremptory challenge, telling defense counsel, "You have to show me bias." After further discussion, the court denied both peremptory challenges, finding the prospective jurors could be fair and impartial. At no point did the court or counsel reference Code of Civil Procedure section 231.7 (section 231.7), which sets forth certain procedures for eliminating unconscious bias in the use of peremptory challenges.

Midway through trial, the prosecution sought to clarify the trial court's in limine ruling that counsel not ask for details about the two other men's sexual assaults of B. After further discussion, the court ordered that counsel could ask about the fact that B. had reported sexual assaults by other men but had not reported Herediasantana, but counsel could not ask for details about those assaults, which the court found to be irrelevant, prejudicial, and lacking foundation. In accordance with that ruling, the jury heard testimony from B. and two social workers about her reports of sexual assaults by two other men, and defense counsel cross-examined B. about her reporting. However, no one testified about the details of those other sexual assaults.

The jury convicted Herediasantana on all counts, and the trial court sentenced him to 19 years and eight months in state prison.

3

# DISCUSSION

## I.

### DENYING THE DEFENDANT'S PEREMPTORY CHALLENGES

### WAS HARMLESS ERROR

Herediasantana first contends the trial court erred in denying his peremptory challenges without following the procedures required by section 231.7, and that this error mandates reversal of the judgment. While we agree the court erred, we find the error to be harmless.

Section 231.7 prohibits the use of peremptory challenges "to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).) If a party or the court objects to the use of a peremptory challenge under section 231.7, "the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (*Id.*, subd. (c).)

What happens next depends upon the reason given for exercising the peremptory challenge. First, the trial court must determine whether the reason is one of the presumptively invalid reasons listed in section 231.7, subdivisions (e) and (g). If it is not, then the court must evaluate the reason in light of the totality of the circumstances to determine if there is a substantial likelihood an objectively reasonable person would view membership or perceived membership in any of the protected groups as a factor in the use of the peremptory challenge. (§ 231.7, subd. (d)(1).) If there is such a likelihood, the objection to the peremptory challenge must be sustained. (*Ibid.*) The court must explain the reasons for its ruling on the record. (*Ibid.*)

In this case, defense counsel attempted to exercise peremptory challenges as to Juror No. 126 because he was a retired Army officer, and as to Juror No. 159 because he initially suggested Herediasantana was likely guilty if he had been arrested and charged. Those reasons were not presumptively invalid under section 231.7, subdivisions (e) or (g), so the trial court should have next conducted the totality of the circumstances analysis required by subdivision (d). As the court did not perform that analysis, it erred in sustaining the People's objections to the defense's peremptory challenges. The People rightly concede as much.

Our analysis does not end there, however; we must also determine whether the error was reversible. Section 231.7, subdivision (j), provides that an "erroneously denied" objection to a peremptory challenge "shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." But the statue does not specify what test applies to an erroneously *sustained* objection.

In the absence of any such statutory directive, appellate courts (including this division) have found that the erroneous sustaining of an objection to a peremptory challenge is not a structural error, and traditional rules on prejudicial error apply. Thus, to prevail on appeal, an appellant must show the inclusion of the challenged juror affected his right to a fair trial and an impartial jury—a showing that "might be difficult, but . . . is not necessarily impossible." (*People v. Guzman* (2025) 115 Cal.App.5th 464, 482–483; see *People v. Tokhunts* (2025) 115 Cal.App.5th 1101, 1114–1115.)

In this case, Herediasantana makes no effort to demonstrate he was prejudiced by the inclusion of Juror Nos. 126 and 159 on the jury, acknowledging that the "[p]rejudice cannot be measured." In the absence of such a showing, we find the error was harmless.

5

## II.

### THE TRIAL COURT DID NOT ERR IN LIMITING THE EVIDENCE
### ABOUT B.'S SEXUAL ABUSE BY OTHER PERPETRATORS

Herediasantana next asserts the trial court erred in excluding evidence regarding B.'s prior rape and molestation, which he asserts would have adversely impacted B.'s credibility. We cannot agree.

Although a defendant generally cannot question a sexual assault victim about her prior sexual activity, Evidence Code section 782 (section 782) creates a limited exception in certain cases if the victim's prior sexual history is relevant to her credibility. (*People v. Bautista* (2008) 163 Cal.App.4th 762, 781–782.) In prosecutions for continuous sexual abuse of a minor (Pen. Code, § 288.5) and other enumerated crimes, section 782 permits the admission of evidence regarding the victim's prior sexual activity following a written motion, an offer of proof, and a hearing, if the trial court finds the evidence relevant under Evidence Code section 780 and not inadmissible under Evidence Code section 352. We review the court's ruling under section 782 for abuse of discretion. (*Bautista,* at p. 782.)

We discern no abuse of discretion here. The trial court permitted Herediasantana to present evidence that B. had reported sexual assaults by other men as a teenager so he could attempt to impeach her based on her failure to report him. The court properly excluded the details about those sexual assaults, as those details had very little bearing on her credibility and were highly prejudicial.

Herediasantana contends for the first time on appeal that section 782 is inapplicable because it only applies to consensual sexual conduct, not to nonconsensual conduct like what B. experienced. We are not persuaded. The statute itself does not distinguish between consensual and

6

nonconsensual conduct, and imputing such a distinction would be nonsensical. The statute governs the admission of evidence in prosecutions for continuous sexual abuse of a child under the age of 14, among other crimes. (See § 782, subd. (c)(1) [citing Pen. Code, § 288.5].) Since a child under the age of 14 cannot consent to sexual activity as a matter of law (*People v. Soto* (2011) 51 Cal.4th 229, 248), it would make no sense to read section 782 as permitting the admission of evidence concerning a child's consensual sexual activity with others (a legal impossibility) but not their nonconsensual sexual activity.

## III.

### SUBSTANTIAL EVIDENCE SUPPORTS THE CONVICTIONS FOR VIOLATING RESTRAINING ORDERS

Herediasantana's final contention is there was insufficient evidence he knew about the terms of the protective order restraining him from contacting Y., and his convictions for violating Penal Code section 273.6 must therefore be reversed. Again, we disagree.

In February 2022, Y.'s mother obtained a temporary restraining order that prohibited Herediasantana from having any contact with Y. until the March 2022 hearing. Subsequent court orders show that hearing was continued twice *at Herediasantana's request*—first because he needed "more time to prepare," and again "[d]ue to the unavailability of [his] counsel." Y. testified that Herediasantana "knew about" the restraining order because he told her he "received some papers," yet they continued to have contact with one another because she "wanted to be with him." Indeed, according to Y., Herediasantana helped her run away from home in March 2022 and move in with him.

7

Viewed in the light most favorable to the judgment, this constitutes substantial evidence that Herediasantana knew there was a restraining order in place, had received a copy of the restraining order, had an opportunity to read it, and nevertheless continued his contact with Y.[1] There was thus ample evidence he committed an "intentional and knowing violation of a protective order" within the meaning of Penal Code section 273.6.

## DISPOSITION

The judgment is affirmed.



SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.

---

[1] The jury was instructed that "the People do not have to prove that the defendant actually read the court order." (See CALCRIM No. 2701.) Herediasantana does not challenge the correctness of that instruction.